Filed 5/18/16; part. pub. & mod. order 5/24/16 (see end of opn.)

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIRST APPELLATE DISTRICT

DIVISION ONE

| | |
|---|---|
| JOSEPH BAXTER,<br><br>     Plaintiff and Appellant,<br><br>v.<br><br>MICHAEL BOCK et al.,<br><br>     Defendants and Respondents. | A142372, A142984, A143689<br><br>(Sonoma County<br>Super. Ct. No. SCV 253350) |
| MICHAEL BOCK et al.,<br><br>     Plaintiffs and Appellants,<br><br>v.<br><br>JOSEPH BAXTER,<br><br>     Defendant and Respondent. | A144112<br><br>(Sonoma County<br>Super. Ct. No. SCV 253366) |

Attorney Joseph Baxter and his former clients Michael and Lorie Bock, participated in an arbitration under the Mandatory Fee Arbitration Act (Bus. & Prof. Code, § 6200 et seq.; MFAA), after stipulating to be bound by the result. In his decision, the arbitrator concluded the legal services provided by Baxter should be valued at the amount already paid by the Bocks and awarded Baxter nothing. As all parties acknowledge, however, the arbitrator erred in stating the amount of fees paid by the Bocks. When the error was brought to his attention, the arbitrator declined to correct his award. In addition, considerably after the arbitration was concluded, Baxter discovered the arbitrator was in the business of auditing attorney bills and had written extensively about attorney overbilling.

In the trial court, Baxter argued unsuccessfully that the arbitration award should be vacated, among other reasons, because the arbitrator erred in stating the amount paid by the Bocks and failed to disclose matters relating to bias. He repeats those arguments on appeal. In turn, the Bocks contend the trial court failed to award them sufficient legal fees in connection with the confirmation proceeding.

We reject Baxter's arguments and affirm the trial court's confirmation of the arbitration award. With respect to the attorney fees award, we find no error in the amount of compensable time approved by the trial court, but we can find no reasonable basis in the record for the court's assignment of different hourly rates to the Bocks' two attorneys. We therefore vacate this aspect of the court's decision and remand for its reconsideration.

## I. BACKGROUND

Baxter, an attorney, provided legal services for the Bocks. In August 2011, following a dispute over the value of Baxter's services, the Bocks filed a request for arbitration with respect to his fees under the MFAA. The State Bar of California appointed Attorney James Schratz to arbitrate the dispute.

When the parties first appeared for arbitration, Baxter claimed he needed more time to prepare a response to the arguments raised by the Bocks in their arbitration brief, and a two-month continuance was granted. The arbitration ultimately occurred in August 2012. At that time, the parties stipulated the arbitrator's award would be binding. (Bus. & Prof. Code, § 6204, subd. (a) [parties to an MFAA arbitration can agree in writing to be bound by the award].)

Prior to the commencement of the hearing, Schratz informed the parties the arbitration hearing would last only four hours.[1] The Bocks presented their case through 40 minutes of direct testimony by the Bocks and a third witness. Baxter's cross-

---

[1] The record does not explain the arbitrator's limitation, other than he had an appointment later in the day. Under the State Bar rules, an MFAA arbitrator is not to be paid for his or her services unless the arbitration lasts more than four hours. (Rules of State Bar, tit. 3, div. 4, ch. 2, rule 3.536(E).) The parties agree Schratz was a volunteer arbitrator.

2

examination of the Bocks' witnesses consumed much of the remaining four hours. Following this testimony, the arbitrator accepted the Bocks' arbitration brief and its exhibits as testimonial evidence. When Baxter moved to have his arbitration brief and exhibits admitted into evidence, the arbitrator did not rule on the request.

After Baxter had testified for 15 minutes, Schratz told him to conclude his testimony promptly. When Baxter asked for more time, the arbitrator agreed to receive additional evidence from Baxter in the form of a declaration and supplemental briefing, and he provided Baxter an additional 40 minutes of live testimony.

Several months after the conclusion of the arbitration, in December 2012, Schratz entered an award stating he had reviewed all of the documents and considered all of the testimony presented at the hearing and was ruling "in favor of the clients Michael and Lorie Bock." Specifically, Schratz found Baxter had billed the Bocks $99,373; the services rendered were worth only $68,148; and the Bocks had paid Baxter $68,148. Accordingly, other than requiring Baxter to reimburse the Bocks one-half of the arbitration filing fee, Schratz rendered an award of $0. In the text of the decision, Schratz criticized Baxter in several respects, finding he engaged in "a substantial amount" of block billing, which is the practice of reporting more than one task in a single time entry; violated State Bar Rules of Professional Conduct, rule 3-310(F) when he requested and accepted payment of fees billed to the Bocks from a third party without obtaining the Bocks' written consent to the practice or making appropriate conflict of interest disclosures; failed to keep the Bocks informed of the status of their appeal; failed to retender the defense of their action to the insurance company following an appeal; and spent "unreasonable" amounts of time on certain specified tasks.

The figure quoted by Schratz for the fees paid by the Bocks was, as the award stated, drawn from a letter sent by Baxter to the Bocks' counsel prior to the commencement of the arbitration, a copy of which had been forwarded by Baxter to the arbitrator. As all parties acknowledge, Baxter misstated the amount of money paid by the Bocks in this letter; in fact, they had paid him only $29,225, less than half of the amount

stated in the award. The arbitrator apparently had not been informed of the error in the letter.

Baxter sent a letter to Schratz, acknowledging his error in the letter, contending the letter was not part of the evidence at the arbitration hearing, and asking for the award to be corrected to reflect the actual payments. Unlike Baxter, who merely sent a letter to Schratz, the Bocks filed a formal request for correction with the State Bar, acknowledging their actual payments of $29,225 and seeking correction to confirm Baxter's services were worth that amount. Through the State Bar, Schratz denied the Bocks' request, finding the claimed error in the award did not qualify as a basis for correction of an arbitration award under the relevant State Bar arbitration rule. Although the response did not directly acknowledge Baxter's letter requesting correction, it noted the arbitrator had reviewed Baxter's "replies" to the Bocks' request for correction, which made clear Baxter's position regarding the error.

Baxter filed a petition to correct or vacate the arbitration award in the trial court, and the Bocks filed a petition to confirm it. In the course of the extended trial court proceedings, Baxter raised several issues in addition to the undisputed error on the face of the arbitration award.

The trial court denied the petition to correct or vacate and granted the petition to confirm. In a lengthy and detailed written decision, the court found (1) the arbitrator's error in relying on Baxter's letter did not provide grounds for correcting or vacating the award; (2) Schratz was not subject to disqualification for bias and was not required to disclose aspects of his professional background that, Baxter contended, would have provided grounds for his disqualification; and (3) the arbitrator's purported evidentiary errors did not provide grounds for vacating the award. The court subsequently entered a judgment confirming the award.

Following entry of the judgment, the Bocks filed a motion seeking reimbursement of their attorney fees incurred in connection with the superior court proceedings to confirm the award. The request was premised on their fee agreement with Baxter, which permitted the prevailing party in an action to enforce the agreement to recover reasonable

4

attorney fees and costs. The motion detailed Baxter's extensive motion practice in the trial court, arguing it was largely unnecessary and ineffective.[2] The motion was accompanied by a declaration from the Bocks' attorney, who detailed Baxter's allegedly abusive conduct and attached the legal bills incurred by the Bocks in connection with the trial court proceedings. Although the Bocks' attorneys had billed their clients at a rate of $375 per hour, they sought compensation at a rate of $425 per hour, for a total of $122,584. Baxter opposed the motion, disputing the characterization of his conduct and arguing the fee request was "outrageously inflated," due in part to the activities of the Bocks' attorneys. Baxter also pointed out the Bocks had already received the benefit of the $38,922 error in Schratz's arbitration award.

The trial court granted the Bocks' motion to the extent of ordering Baxter to pay $32,790 in attorney fees. The court found the Bocks' attorneys' regular hourly charges not reflective of market conditions in Sonoma County and reduced them accordingly. In doing so, it assigned a lodestar figure for the two attorneys involved in the litigation, Kathryn Curry and Kenneth Van Vleck, of $300 and $350 per hour, respectively. Although the court disagreed with Baxter that the confirmation proceeding was a " 'simple' motion," it authorized compensation for a total of 103.6 attorney hours, less than half of the time actually billed by Curry and Van Vleck. In explanation, the court noted: "The billings themselves provide some justification for a fee award. There is little additional evidence presented. Considering the matters contained in the court file, and the court's experience with this matter, the court determines as follows . . . ." Both parties have appealed from the court's attorney fee award.[3]

---

[2] We have not attempted to recount the parties' procedural maneuvering in the trial court because its details are not relevant to the issues raised on appeal.

[3] A total of four appeals have been filed. Baxter's initial notice of appeal, case No. A142372, purported to appeal four orders of the trial court: the initial order ruling on the cross-petitions to confirm and vacate, an amended version of the same ruling, an order denying Baxter's motion for a new trial, and an order denying his motion for reconsideration and to vacate the judgment. Baxter thereafter appealed the judgment confirming the award (case No. A142984), and both parties have appealed the attorney

5

## II. DISCUSSION

On appeal, Baxter contends the judgment confirming the arbitration award should be reversed and the award vacated because (1) the arbitrator relied on erroneous information in Baxter's letter, (2) the arbitrator should have disqualified himself for bias, and (3) the arbitrator made erroneous evidentiary rulings.

### A. *The Arbitrator's Error*

With very limited exceptions, the judiciary is precluded from vacating an arbitration award on the basis of purported errors of fact or law. "California law favors alternative dispute resolution as a viable means of resolving legal conflicts. 'Because the decision to arbitrate grievances evinces the parties' intent to bypass the judicial system and thus avoid potential delays at the trial and appellate levels, arbitral finality is a core component of the parties' agreement to submit to arbitration.' [Citation.] Generally, courts cannot review arbitration awards for errors of fact or law, even when those errors appear on the face of the award or cause substantial injustice to the parties." (*Richey v. AutoNation, Inc.* (2015) 60 Cal.4th 909, 916 (*Richey*).) " '[B]oth because it vindicates the intentions of the parties that the award be final, and because an arbitrator is not ordinarily constrained to decide according to the rule of law, it is the general rule that, "The merits of the controversy between the parties are not subject to judicial review." [Citations.] More specifically, courts will not review the validity of the arbitrator's reasoning. [Citations.] Further, a court may not review the sufficiency of the evidence supporting an arbitrator's award.' " (*Jones v. Humanscale Corp.* (2005) 130 Cal.App.4th 401, 407–408.) " 'When parties contract to resolve their disputes by private arbitration, their agreement ordinarily contemplates that the arbitrator will have the power to decide any question of contract interpretation, historical fact or general law necessary, in the

---

fees award (case Nos. A143689 and A144112). All of the appeals have been consolidated. We decline to address the Bocks' argument that Baxter's appeal of the trial court's various orders and his appeal of the attorney fee order should be dismissed. While it appears that some of these arguments are technically meritorious, dismissal of the particular appeals cited by the Bocks would not change the nature of the claims made on appeal or their resolution in this decision.

6

arbitrator's understanding of the case, to reach a decision. [Citations.] Inherent in that power is the possibility the arbitrator may err in deciding some aspect of the case. Arbitrators do not ordinarily exceed their contractually created powers simply by reaching an erroneous conclusion on a contested issue of law or fact, and arbitral awards may not ordinarily be vacated because of such error, for " '[t]he arbitrator's resolution of these issues is what the parties bargained for in the arbitration agreement.' " ' " (*Hoso Foods, Inc. v. Columbus Club, Inc.* (2010) 190 Cal.App.4th 881, 887.)

The arbitrator found the Bocks did not owe Baxter any further payments for his services. Under the prevailing law, we are precluded from reviewing the sufficiency of the evidence supporting that determination or the arbitrator's reasoning in reaching it. While it is understandably frustrating for Baxter that the arbitrator's decision was based on demonstrably flawed reasoning, we are not authorized to vacate the award for that reason.

In an effort to avoid the restrictions on judicial review of arbitration awards, Baxter argues the award should be vacated under Code of Civil Procedure[4] section 1282.2, subdivision (g), which states: "If a neutral arbitrator intends to base an award upon information not obtained at the hearing, he shall disclose the information to all parties to the arbitration and give the parties an opportunity to meet it."

The argument fails to overcome the general prohibition on merits review. First, it is far from clear that section 1282.2 applies to this matter. Section 1282.2 is part of the California Arbitration Act (Code Civ. Proc., § 1280 et seq.; CAA), which is a "separate and distinct arbitration scheme" from the MFAA, which has "its own rules and limitations, as set forth in the Business and Professions Code." (*Aguilar v. Lerner* (2004) 32 Cal.4th 974, 983, 984.) Baxter cites no authority suggesting section 1282.2 applies to arbitrations under the MFAA, nor does he cite any parallel provision from the provisions

---

[4] All statutory references are to the Code of Civil Procedure unless otherwise indicated.

governing MFAA arbitrations.[5] (See, e.g., *Benjamin, Weill & Mazer v. Kors* (2011) 195 Cal.App.4th 40, 60, fn. 10 (*Kors*) [CAA disclosure rules do not apply to arbitrations under the MFAA].) Neither the MFAA nor the State Bar's fee arbitration rules contain a provision similar to section 1282.2, subdivision (g), and the State Bar's rules permit an arbitration to occur without any hearing at all. (Rules of State Bar, tit. 3, div. 4, ch. 2, rule 3.542.) The State Bar's Fee Arbitration Handbook states only that an award should be "based upon the evidence submitted," rather than restricting the record to evidence presented at the hearing. (State Bar, Com. on Mandatory Fee Arbitration, Fee Arbitration Handbook (Apr. 2005) § XII, p. 22.) Accordingly, the rule of section 1282.2, subdivision (g) appears not to apply to MFAA arbitrations.

Yet even if section 1282.2 did apply here, we are not persuaded that the contents of Baxter's letter qualify as "information not obtained at the hearing." Section 1282.2, subdivision (g) is generally regarded as precluding an arbitrator from relying on evidence obtained by his or her own investigation, at least without providing the parties notice and an opportunity to respond. (See, e.g., *Canadian Indem. Co. v. Ohm* (1969) 271 Cal.App.2d 703, 708–709.) The requirement of subdivision (g) that the arbitrator "disclose the information to all parties . . . and give the parties an opportunity to meet it" makes little sense if the information was provided to the arbitrator by the parties themselves.

Further, while the document was not submitted on the day the parties met with the arbitrator, Baxter sent it to the arbitrator in the normal course of the arbitration proceedings. In the absence of any contrary indication in the letter itself, the arbitrator

---

[5] At oral argument, counsel suggested that the provisions of the CAA are applicable to this arbitration by virtue of the parties' agreement to make the MFAA arbitration binding. That argument was waived when it was not presented in Baxter's opening brief. (*People v. Duff* (2014) 58 Cal.4th 527, 550, fn. 9.) In any event, the argument proves too much. Baxter's argument would make the CAA applicable to every MFAA arbitration in which the parties stipulated to a binding result, effectively eliminating the distinction between the two systems recognized in *Aguilar v. Lerner, supra*, 32 Cal.4th at pages 983–984.

was justified in regarding it as properly within the record of proceedings. Baxter's argument that "hearing" under section 1282.2 is restricted to the period during which the parties are in the presence of the arbitrator is inconsistent with the flexible procedures permitted in arbitrations. In particular, it is inconsistent with Baxter's own submission of written testimony in this arbitration well after the conclusion of the hearing. He cites no relevant legal authority to support his restrictive view of the statute.

Baxter's claim that the order violates due process is without merit. The concept of due process does not apply to private arbitration proceedings. (*Mave Enterprises, Inc. v. Travelers Indemnity Co.* (2013) 219 Cal.App.4th 1408, 1438–1439 (*Mave Enterprises*).) Yet even if due process principles were applicable here, we would find no violation. Baxter himself wrote the letter on which the arbitrator based his award and sent a copy to the arbitrator, presumably for the arbitrator's information. Baxter therefore was fully aware of the possibility the arbitrator would rely on it. For that reason, the two cases cited by Baxter in support of his due process claim are inapplicable. *Carter v. Kubler* (1943) 320 U.S. 243, 246, and *Moser v. Mortgage Guarantee Co.* (9th Cir. 1941) 123 F.2d 423, 425, both address the same Depression-era statutory scheme in finding it is error for a bankruptcy commissioner to value property based partly on personal investigation. Schratz made no personal investigation; he relied on erroneous information provided by Baxter.

## B. *The Arbitrator's Disclosures*

Baxter claims the award should be vacated because the arbitrator failed to make required disclosures about his background or, alternately, should have disqualified himself for bias.

### 1. Factual Background

Both parties received e-mails disclosing Schratz's address and law firm affiliation, Jim Schratz & Associates. Beyond that, the extent of the arbitrator's disclosure of his background was in dispute. Baxter asserted in a declaration that Schratz told the parties only that he had worked for an insurance company in the past and had previously served as an arbitrator. The Bocks' attorney declared Schratz described "the nature of his law

9

practice and his experience as a legal fee auditor and expert," including "the nature of his legal practice included reviewing and auditing legal bills, acting as a retained expert, and acting as a fee arbitrator," as well as prior work at Fireman's Fund Insurance Company (Fireman's Fund). Schratz submitted a declaration stating he told the parties "on more than one occasion" of his experience as a legal fee bill auditor and disclosed his Web site, which contains information about his work.[6]

Following his receipt of the arbitration award, Baxter learned information causing him to conclude Schratz was biased against attorneys. Among the information submitted to the trial court in connection with Baxter's claim that the arbitration award should be vacated either on grounds of a failure to disclose or outright bias was the following:

(1) a July 1992 article from the Wall Street Journal profiling Schratz, then a vice-president of Fireman's Fund, in which his job was described as finding "attorneys who, he believes, do unnecessary work, inflate bills or even fake accidents." The article described a variety of excessive and fraudulent billing practices uncovered by Schratz in his work for Fireman's Fund and described him as "more than willing to believe the worst about lawyers," based on his experience;

(2) a promotional flyer assembled by Schratz that recounts the results of billing audits performed by his law firm that resulted in judicial awards of legal fees substantially lower than those requested by the attorneys;

(3) a 1998 law review article written by Schratz subtitled, "A Psychological and Sociological Analysis of Why Attorneys Overbill," as well as other articles written by Schratz discussing proper billing practices;

---

[6] Unfortunately, the trial court did not resolve the dispute over the nature of the arbitrator's disclosure at the hearing. After reviewing the conflicting evidence, the trial court noted only, "there is no evidence that [Baxter] had actual knowledge of the arbitrator's background here in issue," without making clear what this "background" entailed.

(4)  a 1992 article by Schratz in a State Bar publication discussing best practices by outside counsel, in the course of which he stated Fireman's Fund "will not tolerate abusive billing" and criticizes block billing as a "fraudulent practice"; and

(5) a declaration by an attorney, John O'Connor, who has been acquainted with Schratz since 1988, and had filed suit against Schratz for defamation.  O'Connor stated he had spoken with "numerous" attorneys who had disputes with Schratz over fees and recounted various claims made to him of improper conduct or unfairness by Schratz in his work as a fee auditor.  Based on his own experience, which included deposing Schratz and persons who worked with him at Fireman's Fund, O'Connor claimed Schratz was biased "against attorneys and their bills" and took shortcuts in evaluating legal bills. O'Connor's declaration contains five pages of criticism of Schratz's audit methods.

Schratz submitted a second declaration stating he was not biased, had no prior relationship with any of the parties or their attorneys, had never been "predisposed to rule in any particular manner in the fee arbitration proceeding," and knew of no facts that would require his disqualification or recusal.  In that declaration, Schratz described the nature of his career and law practice, stating he had first worked for Fireman's Fund for 13 years, adjusting "complex high profile insurance claims."  In 1993, he left to form his own consulting and expert witness firm "specializ[ing] in providing testimony on insurance industry practices such as claims handling or investigating insurance fraud."  A "relatively small amount" of his practice involves auditing legal bills.  As to that part of his business, Schratz explained, most of it is done by his associates.  Eighty percent of their work involves reviewing fee applications that have been submitted by counsel for prevailing parties in a lawsuit.  The remaining 20 percent of the audits performed by Schratz's firm are done in support of attorneys, either in connection with attorney fee requests or fee disputes.  The declaration lists some 26 law firms, most large and well known, that have retained Schratz's firm in support of their fee requests.

## 2.  Governing Law

Section 1286.2, subdivision (a)(6) permits a court to vacate an arbitration award if the arbitrator "either:  (A) failed to disclose within the time required for disclosure a

11

ground for disqualification of which the arbitrator was then aware; or (B) was subject to disqualification . . . but failed upon receipt of timely demand to disqualify himself or herself as required by that provision." Although the MFAA does not specify the grounds for vacating an award rendered under its provisions, it does authorize the filing of a petition to confirm, correct, or vacate an award "in the same manner as provided" in the CAA. (Bus. & Prof. Code, § 6203, subd. (b).) We therefore assume that section 1286.2 applies to judicial challenges to an award under the MFAA, as has at least one other court. (See, e.g., *Glaser, Weil, Fink, Jacobs & Shapiro, LLP v. Goff* (2011) 194 Cal.App.4th 423, 436.)

"Where the material facts are undisputed, the trial court's determination whether an arbitrator failed to make required disclosures is reviewed de novo. [Citation.] Where the facts are disputed, ' "[w]e must accept the trial court's resolution of disputed facts when supported by substantial evidence; we must presume the court found every fact and drew every permissible inference necessary to support its judgment, and defer to its determination of credibility of the witnesses and the weight of the evidence." ' [Citation.] This standard applies to judgments based on affidavits or declarations, as well as judgments based on oral testimony." (*United Health Centers of San Joaquin Valley, Inc. v. Superior Court* (2014) 229 Cal.App.4th 63, 74.)

### a. *Disclosure Requirements Under the MFAA*

The case law governing disclosure by an arbitrator has arisen under the CAA, which requires an arbitrator to disclose "all matters that could cause a person aware of the facts to reasonably entertain a doubt that the proposed neutral arbitrator would be able to be impartial," including a specific list of matters pertaining largely to the arbitrator's past relations, if any, to the parties and their counsel. (§ 1281.9, subd. (a).) Section 1281.9, however, does not apply to arbitrations under the MFAA. (See, e.g., *Kors, supra*, 195 Cal.App.4th 40, 60, fn. 10 [CAA disclosure rules do not apply to arbitrations under the MFAA].) We must therefore determine disclosure obligations under the MFAA independently.

12

The statutes and State Bar-promulgated rules governing MFAA arbitrations contain no similar disclosure requirement. Rule 3.537 of the State Bar's fee arbitration rules, promulgated under the authority of Business and Professions Code section 6204.5, subdivision (a), states: "An arbitrator who believes he or she cannot render a fair and impartial decision or who believes there is an appearance that he or she cannot render a fair and impartial decision must disqualify himself or herself or accede to a party's challenge for cause." (Rules of State Bar, tit. 3, div. 4, ch. 2, rule 3.537(B).) Rule 3.537 does not, however, require any particular disclosure by an arbitrator.

The State Bar's Fee Arbitration Handbook, published in April 2005, does address the issue. Section V, governing the assignment and disqualification of arbitrators, states: "If an arbitrator, for any reason, may not be impartial, that arbitrator shall disqualify himself or herself from any further consideration of the proceedings." (State Bar, Com. on Mandatory Fee Arbitration, Fee Arbitration Handbook (Apr. 2005) § V, p. 8.) Implementing this requirement, section V requires arbitrators to "disclose any prior or present relationship to any party or participant in the proceeding and any other fact that may bear upon his or her disqualification as an arbitrator." (*Ibid.*) Because an arbitrator's disqualification under the MFAA turns on his or her ability to be impartial, the handbook's requirement of disclosure of matters bearing on the arbitrator's disqualification essentially requires disclosure of matters relating to impartiality or the appearance of impartiality, the same standard for disclosure imposed by the general disclosure requirement of section 1281.9, subdivision (a). As a result, the general disclosure requirements of the MFAA and CAA are, for practical purposes, the same, and decisions under the "impartiality" disclosure requirements of the CAA may be applied in evaluating arbitrator disclosure obligations under the MFAA.

### b. *Disclosure Generally*

The leading case on CAA disclosure is *Haworth v. Superior Court* (2010) 50 Cal.4th 372 (*Haworth*), in which the female plaintiff in a medical malpractice arbitration contended the award should be vacated because the arbitrator, a retired judge, failed to disclose that he had been censured 10 years earlier for conduct offensive to

female court staff.  (*Id.* at pp. 378–379.)  Discussing "the general requirement that the arbitrator disclose any matter that reasonably could create the appearance of partiality," the court noted:  " 'Impartiality' entails the 'absence of bias or prejudice in favor of, or against, particular parties or classes of parties, as well as maintenance of an open mind.' [Citation.]  In the context of judicial recusal, '[p]otential bias and prejudice must clearly be established by an objective standard.'  [Citations.]  'Judges, like all human beings, have widely varying experiences and backgrounds.  Except perhaps in extreme circumstances, those not directly related to the case or the parties do not disqualify them.' [Citation.] [¶] . . . [¶] 'An impression of possible bias in the arbitration context means that one could reasonably form a belief that an arbitrator was biased *for or against a party for a particular reason.*' "  (*Id.* at pp. 385, 389, italics added by *Haworth*.)

The court rejected out of hand the plaintiff's contention that the arbitrator's "public censure would cause a person to reasonably conclude that this arbitrator might be biased against a female plaintiff in a medical malpractice case involving cosmetic surgery."  (*Haworth, supra*, 50 Cal.4th at p. 389.)  While recognizing the arbitrator's offensive conduct, all directed specifically at women, "is clearly inappropriate; it is disrespectful toward staff members and tends to create an offensive work environment," the court concluded "nothing in the public censure would suggest to a reasonable person that [the arbitrator] could not be fair to female litigants, either generally or in the context of an action such as the one now before us."  (*Id.* at p. 390.)

After further discussion, the court explained:  "There are many reasons why a party might, reasonably or unreasonably, prefer not to have a particular arbitrator hear his or her case—including the arbitrator's prior experience, competence, and attitudes and viewpoints on a variety of matters.  The disclosure requirements, however, are intended only to ensure the impartiality of the neutral arbitrator.  [Citation.]  They are not intended to mandate disclosure of all matters that a party might wish to consider in deciding whether to oppose or accept the selection of an arbitrator.  [Citation.]  When, as here, an arbitration agreement provides the parties or the parties' representatives the authority to jointly select a neutral arbitrator, they have the opportunity to take reasonable steps to

14

satisfy themselves that the arbitrator they agree upon is acceptable. The type of information here at issue—a decision publicly censuring a judge, which has been published in the Official Reports of this court—is readily discoverable." (*Haworth, supra*, 50 Cal.4th at pp. 393–394, fn. omitted.) In further explaining its conclusion that disclosure of this type of matter was not required, the court stated: "The arbitrator cannot reasonably be expected to identify and disclose all events in the arbitrator's past, including those not connected to the parties, the facts, or the issues in controversy, that conceivably might cause a party to prefer another arbitrator. Such a broad interpretation of the appearance-of-partiality rule could subject arbitration awards to after-the-fact attacks by losing parties searching for potential disqualifying information only after an adverse decision has been made. [Citation.] Such a result would undermine the finality of arbitrations without contributing to the fairness of arbitration proceedings." (*Id.* at pp. 394–395.)

### c. *Disclosure of Business Activities*

With respect to the nature of the business of an arbitrator, courts have recognized that " '[b]ecause arbitrators are selected for their familiarity with the type of business dispute involved, they are not expected to be entirely without business contacts in the particular field, but they should disclose any repeated or significant contacts which they may have with a party to the dispute, his attorney or his chosen arbitrator.' " (*Casden Park La Brea Retail LLC v. Ross Dress for Less, Inc.* (2008) 162 Cal.App.4th 468, 477.)

Despite this general rule, the court in *Kors, supra*, 195 Cal.App.4th 40, imposed an additional disclosure requirement for attorney arbitrators whose practice is focused in a particular area related to the subject matter of the litigation. *Kors* featured, like this case, a fee dispute between a law firm and its client. (*Id.* at p. 46.) A panel of three arbitrators was appointed. (*Id.* at p. 49.) Following issuance of the award, the client learned that, at the time of the arbitration, the chief arbitrator was representing a prominent law firm in a client fee dispute before the California Supreme Court. In addition, his law firm's Web site stated his practice was focused on " 'claims against lawyers' " and touted his representation of " 'some of the nation's largest law firms.' "

(*Id.* at p. 51.) On appeal, the client argued the chief arbitrator had an obligation to disclose the nature of his law practice. In considering the claim, the court noted that, in enacting the disclosure requirements of the CAA, "[o]ne of the ethical problems the Legislature was specifically concerned about was the danger that, like the referees in proceedings authorized by section 638 and 639, arbitrators' impartiality might be undermined by their economic self-interest." (*Kors*, at p. 68, fn. omitted.) In particular, the Legislature was concerned that persons who frequently served as neutrals in a particular industry might tend to favor "steady customers," parties in the industry who commonly appear before them. (*Ibid.*) By analogy, the *Kors* court concluded the chief arbitrator's legal practice could cause "a reasonable person [to] doubt whether [his or her] dependence on business from lawyers and law firms sued by former clients would prevent him from taking the side of a client in a fee dispute with a former law firm, because doing so might 'put at risk' his ability to secure business from the lawyers and law firms whose business he solicits." (*Id.* at p. 71.) For that reason, the court concluded, the chief arbitrator was required "to timely disclose to the parties the nature of his legal practice, including the fact that he was then representing a law firm engaged in a fee dispute with a former client." (*Id.* at p. 73.)

### 3. Discussion

#### a. *Disclosure Under* Kors

We find no obligation under *Kors* for Schratz to have disclosed the nature of his consulting practice. Unlike the arbitrator in *Kors*, Schratz's practice was not devoted exclusively to one side of fee disputes. As Schratz stated in his second declaration, the bulk of the fee audit work of his firm was not performed on behalf of clients in legal fee disputes but for the losing parties in litigation who were faced with claims for prevailing party attorney fees. Further, a significant percentage of his clients were attorneys looking for expert support for their bills, either against their former clients or in support of their fee applications. The expertise of his firm was therefore in reviewing attorney bills, rather than in representing one side or the other in fee disputes. Because Schratz did not depend exclusively on business from legal clients or losing parties, the nature of his

16

business created no particular economic incentive for him to rule either in favor of Baxter or against him, and there was no reason to think that a ruling for Baxter "might 'put at risk' his ability to secure business from the lawyers and law firms whose business he solicits." (*Kors, supra*, 195 Cal.App.4th at p. 71.) As a result, the nature of Schratz's business did not create a reasonable doubt about his ability to rule impartially in the arbitration.

Because we reach this conclusion, we need not resolve the parties' dispute about the actual nature of Schratz's disclosure at the arbitration hearing. Even assuming Schratz told the parties nothing more than he used to work at an insurance company and now maintained a law practice, as Baxter contends, the nature of his business did not require further disclosure.

### b. *Disqualification*

Baxter's central claim is that Schratz was biased in his approach to evaluating attorney fee requests and therefore should have disqualified himself.[7]

We agree with the trial court that Baxter failed to prove his fundamental claim that Schratz is biased against attorneys. Schratz is himself an attorney, and there is nothing in the materials presented by Baxter to suggest he bears a grudge or is otherwise predisposed to rule against attorneys. Although his practice sometimes causes him to represent interests contrary to those of attorneys, that alone does not demonstrate a bias. Nor is there anything in the award or in the conduct of the arbitration proceedings to suggest Schratz bore some animus toward Baxter. The fact the arbitrator ruled against him is not, standing alone, evidence of bias.

Rather than demonstrating bias or a lack of impartiality, the materials submitted by Baxter suggest Schratz was an appropriate choice to arbitrate this matter. He has

---

[7] Actual bias is not listed as a basis for vacating an arbitration award under section 1286.2, but subdivision (a)(6) does require a court to vacate an arbitration award if the arbitrator (A) failed to disclose a ground for disqualification or (B) was subject to disqualification. If an arbitrator is actually biased, he or she is subject to disqualification, and the failure to disqualify requires vacating an award under subdivision (a)(6)(B) of section 1286.2.

spent large parts of his 40-year legal career evaluating attorney bills. Further, Schratz's writings make clear he has spent much time and effort investigating how attorneys account for their time and attempting to uncover methods used by attorneys to inflate or exaggerate their work. Contrary to Baxter's claim, this does not betray a "bias" in evaluating legal bills. Schratz's writings never suggest an attorney who performs appropriate services, which are properly accounted for in his or her bills, is not entitled to be paid the negotiated hourly fee for those services. Rather, Schratz recognizes some attorneys overbill and believes their clients should not be required to pay for work that was not actually or appropriately performed. In the Wall Street Journal article, for example, Schratz is described as working to detect attempts by attorneys to cheat Fireman's Fund through their bills. His own writings display a similar concern for unethical and improper billing practices by counsel. Nothing in his writings suggests a belief that attorney work should not be fairly and appropriately compensated.

Baxter's claim of bias is based largely on reports of Schratz's conduct in his practice when retained to work contrary to the interests of attorneys. The mere fact an attorney's professional practice regularly involves representing one type of client against another type does not alone support an inference the attorney cannot be impartial when acting in the role of neutral. On the contrary, our superior courts are filled with former prosecutors and public defenders who regularly try criminal cases without challenge. As discussed in *Kors*, an inference of bias arises only when the arbitrator's private economic interests create an incentive to rule in a particular manner even when acting as a neutral. As discussed, the nature of Schratz's practice does not create such an incentive.

Baxter argues Schratz has a " 'leaning of the mind' in matters concerning attorneys or attorneys' fees," citing *Pacific etc. Conference of United Methodist Church v. Superior Court* (1978) 82 Cal.App.3d 72. In *Pacific*, the Court of Appeal reversed the denial of a request to disqualify for bias a law and motion judge who sent a letter to the parties disclosing he had concluded the plaintiffs' claims were " 'meritorious.' " (*Id.* at p. 76.) Because that opinion had been formed outside the context of a judicial hearing addressed to the merits, the court held, it demonstrated that the judge "has prejudged the

18

matter before him" and required his disqualification. (*Id.* at p. 85.) As the court held, "Bias is defined as a mental predeliction or prejudice; a leaning of the mind; 'a predisposition to decide a cause or an issue in a certain way, which does not leave the mind perfectly open to conviction.' " (*Id.* at p. 86.) Baxter demonstrated no similar prejudice by Schratz against him or his claims in the arbitration. There is no indication Schratz had reached any conclusions about the proper outcome of the arbitration prior to commencing the hearing.

Baxter also criticizes Schratz's skeptical attitude toward block billing. Here we quote the ruling of the trial court, which properly addresses the claim: "Issues involving block billing exist quite apart from the efforts made by Mr. Schratz. Many courts, and legal commentators, have drawn attention to the issues associated with presentations of legal bills in this format. . . . There is no evidence that the Arbitrator employed . . . a *per se* rule of exclusion; in fact, the arbitration award provided that only a small percentage of the fees were excluded, and there was a basis for the exclusion stated."

The type of information Baxter contends Schratz was required to disclose—essentially, his experience in auditing attorney bills and his attitude toward proper methods of billing—is just the type of information that *Haworth* holds is *not* within the arbitrator's duty of disclosure: that is, "the arbitrator's prior experience, competence, and attitudes and viewpoints on a variety of matters." (*Haworth, supra*, 50 Cal.4th at p. 393.) As *Haworth* noted, parties to an arbitration "have the opportunity to take reasonable steps to satisfy themselves that the arbitrator they agree upon is acceptable." (*Ibid.*) If Baxter intended to disqualify any arbitrator whose practice regularly involves representing clients against attorneys, or who believes attorney bills should be carefully scrutinized, he was required to perform his own investigation of Schratz.

## C. *Evidentiary Issues*

Baxter contends the arbitrator's admission into evidence of the Bocks' arbitration brief and exhibits, while "refusing to rule on or admit" Baxter's arbitration brief and

exhibits, violated section 1282.2, former rule 35.0 of the State Bar Rules, and due process.[8]

We place quotations around the phrase "refusing to rule on or admit" because it represents a mischaracterization by Baxter of the evidence on this issue. In a declaration submitted by Baxter discussing the conduct of the hearing, he does not mention having requested the admission of his brief and exhibits, let alone a refusal to admit them. The only evidence on the issue is a declaration by another attendee, Sara Baxter, Baxter's appellate counsel, who states: "Baxter thereupon [(that is, immediately following admission of the Bocks' brief and exhibits)] moved to have the Baxter arbitration brief, and the 42 exhibits attached to it, and a copy of the Bock billing file, also an exhibit, moved into evidence, and further requested that the Baxter arbitration brief be admitted as testimonial evidence. The Arbitrator did not rule on this request." Neither Sara Baxter nor any other witness states that the arbitrator *refused* to admit Baxter's materials. At most, Schratz made no immediate ruling on Baxter's request. There is nothing in the evidence before the trial court to suggest Schratz distinguished between the two parties by agreeing to consider the Bocks' materials while declining to accept the same materials presented by Baxter.

Pursuant to section 1286.2, subdivision (a)(5), an arbitration award may be vacated if "[t]he rights of the party were substantially prejudiced by the refusal of the arbitrators to postpone the hearing upon sufficient cause being shown therefor or by the refusal of the arbitrators to hear evidence material to the controversy or by other conduct of the arbitrators contrary to the provisions of this title." This subdivision is " 'a safety valve in private arbitration that permits a court to intercede when an arbitrator has prevented a party from fairly presenting its case.' [Citation.] When a party contends it

---

[8] Baxter argues the arbitrator violated section 1282.2, but, as discussed above, section 1282.2 does not appear to be applicable to MFAA proceedings. Further, Baxter cites no authority for his implicit claim that a violation of section 1282.2 provides a basis for vacating an arbitration award. We therefore discuss the portion of section 1286.2 dealing with an arbitrator's consideration of evidence, which does provide a basis for vacating an award.

was substantially prejudiced by the arbitrator's exclusion of material evidence, a court should generally consider prejudice before materiality. [Citation.] To find substantial prejudice, the court must first accept the arbitrator's theory and conclude the arbitrator might well have made a different award had the evidence been allowed." (*Epic Medical Management, LLC v. Paquette* (2015) 244 Cal.App.4th 504, 518 (*Epic*).)

We find no merit to Baxter's contention for several reasons. First, he failed to prove the premise of section 1286.2, subdivision (a)(5), that the arbitrator "refus[ed]" to hear material evidence. As discussed above, Baxter's evidence demonstrates only that the arbitrator made no audible ruling when Baxter asked to have his brief and exhibits admitted. There is no indication the arbitrator refused the offer of evidence. Further, the arbitrator gave Baxter an unrestricted opportunity to submit additional written testimony *after* this claimed failure to rule, suggesting the arbitrator was willing to consider any evidence Baxter believed material. Finally, the arbitrator's decision expressly stated he "has reviewed all of the documents." There is no indication he viewed some of the submitted documents as inadmissible.

Second, Baxter has failed to demonstrate "substantial prejudice" from the purported failure of the arbitrator to accept his arbitration brief and exhibits.[9] As noted above, Baxter had the opportunity to submit additional written testimony after the conclusion of the hearing. To the extent he was concerned his arbitration brief was not accepted into evidence, he had the opportunity to repeat critical matter in his supplemental testimony. He has made no attempt to demonstrate what material was contained in his arbitration brief that was not in his written testimony or otherwise before

---

[9] In his reply brief, Baxter contends the conduct of the arbitration was "structural error" that was reversible per se. Section 1286.2 makes no provision for "per se" reversal. The argument is drawn from due process cases, which are inapplicable to arbitrations. (*Mave Enterprises, supra*, 219 Cal.App.4th 1408, 1438–1439.)

the arbitrator, let alone why the arbitrator "might well have made a different award had th[at] evidence been allowed."[10] (*Epic*, *supra*, 244 Cal.App.4th at p. 518.)

There is also no merit to Baxter's claim of a due process violation. It is well-established that the principles of due process do not extend to private arbitration. (*Mave Enterprises, supra*, 219 Cal.App.4th at pp. 1438–1439.) " 'Private arbitration . . . really is private; and since constitutional rights are in general rights against government officials and agencies rather than against private individuals and organizations, the fact that a private arbitrator denies the procedural safeguards that are encompassed by the term "due process of law" cannot give rise to a constitutional complaint.' " (*Id.* at p. 1439.) Although this particular arbitration was conducted under the auspices of the State Bar, a governmental organization, it was binding only because of a private agreement between Baxter and the Bocks.[11]

Nor do we find the purported violation of former rule 35 of the State Bar Rules to support vacating the arbitration award.[12] Baxter contends the arbitrator's admission of the Bocks' arbitration brief as evidence constituted such a violation, but he cites no statutory authority for his implicit claim that the violation of a State Bar fee arbitration rule, standing alone, supports vacating an arbitration award. On the contrary, the exclusive grounds for vacating an award are stated in section 1286.2, and the wrongful admission of evidence is not among them. In any case, we are not persuaded the

---

[10] Baxter's opening brief contains a three-page chart comparing material in his and the Bocks' arbitration briefs. The comparison is immaterial under section 1286.2, subdivision (a)(5), which permits vacating an arbitration award only if material evidence was refused that might have made a difference in the arbitrator's award. The critical question was whether Baxter's arbitration brief contained material evidence that was not otherwise before the arbitrator that might have made a difference to his decision. He has not demonstrated the existence of such evidence.

[11] Baxter's brief does not even acknowledge this issue, let alone make an argument for application of due process principles on the basis of State Bar sponsorship.

[12] Former rule 35.0 was in effect at the time of the arbitration hearing, but it no longer exists. Its content is preserved in current rule 3.541(A). (Rules of State Bar, tit. 3, div. 4, ch. 2, rule 3.541.)

arbitrator erred.  Former rule 35 states:  "Any relevant evidence shall be admitted if it is the sort of evidence upon which responsible persons are accustomed to rely in the conduct of serious affairs, regardless of the existence of any common law or statutory rule to the contrary."  (Rules of State Bar, tit. 3, div. 4, ch. 2, former rule 35.0.)  The arbitrator is a lawyer of some 40 years' experience.  In accepting the Bocks' arbitration brief as evidence, he was competent to distinguish argument from fact.  The arbitration process is regarded as a useful alternative to litigation precisely because it permits such procedural shortcuts.[13]

## D. *Additional Arguments*

We find no merit in Baxter's remaining arguments.

Baxter first claims the caption of Schratz's award, "Findings and Award of the State Bar of California," violates due process because Baxter was not, in fact, issuing findings on behalf of the State Bar.  The caption of an award provides no basis for vacating the arbitration award under section 1286.2.  Further, as noted above, private arbitration is not governed by the due process clause.  (*Mave Enterprises, supra,* 219 Cal.App.4th at pp. 1438–1439.)

Baxter next contends that a declaration submitted by Schratz in connection with the confirmation proceeding "required a motion to intervene since James Schratz was not a party."  Although characterized by Baxter as an "intervenor declaration," it was submitted simply as evidence; Schratz was not seeking any relief or otherwise to participate in the confirmation proceeding, and the trial court overruled Baxter's objection to the declaration.  Baxter cites no authority to support his argument that a trial court lacks the discretion to consider a relevant evidentiary declaration submitted by a person other than a party to the action.[14]

---

[13] We also find no merit to the claim of a violation of the procedural rules of section 1282.2, since this provision of the Code of Civil Procedure is not applicable to MFAA arbitrations.  (*Kors, supra*, 195 Cal.App.4th at p. 60.)

[14] In his reply brief, Baxter also argues the award should be corrected under section 1286.6.  Because the argument was not raised in his opening brief, it is forfeited.

**E.** *The Attorney Fees Order*

The Bocks contend the trial court abused its discretion in setting a different lodestar rate for Attorneys Kathryn Curry and Kenneth Van Vleck and in failing to compensate them for the full number of hours actually worked by their attorneys on the litigation.[15]

"We apply an abuse of discretion standard when reviewing a trial court order awarding attorney fees. [Citation.] ' "Trial judges are entrusted with this discretionary determination because they are in the best position to assess the value of the professional services rendered in their courts." ' [Citation.] Hence, the fee award [' "]will not be disturbed unless the appellate court is convinced that it is clearly wrong.["] ' ] [Citation.] Indulging all inferences in favor of the trial court's order, as we are required to do, we presume the trial court's attorney fees award is correct, and '[w]hen the trial court substantially reduces a fee or cost request, we infer the court has determined the request was inflated.' " (*McKenzie v. Ford Motor Co.* (2015) 238 Cal.App.4th 695, 703–704.)

### 1. The Difference In Hourly Rate

The Bocks' legal services were performed by GCA Law Partners LLP, through Curry and Van Vleck. The two attorneys have similar resumes. Both graduated from prestigious undergraduate and law school programs; Curry ranked second in her law school class at the University of Santa Clara. At the time of the fee request in 2014, Curry had 23 years of legal experience, while Van Vleck had 20 years. Their legal experience in sophisticated civil litigation was also similar, and both have been recognized as excellent practitioners in trade publications. GCA Law Partners LLP,

---

(*Mammoth Lakes Land Acquisition, LLC v. Town of Mammoth Lakes* (2010) 191 Cal.App.4th 435, 476.) In any event, the arbitrator's error in relying on Baxter's letter is not the type of error subject to correction. (*Severtson v. Williams Construction Co.* (1985) 173 Cal.App.3d 86, 95.)

[15] Baxter has appealed the attorney fees order, but his only ground for appeal is that the fee award should be vacated along with the arbitration award. Because we affirm the trial court's judgment confirming the arbitration award, we deny Baxter's appeal of the attorney fees award.

which listed Curry ahead of Van Vleck on the pleadings, charged the Bocks the same hourly rate for both attorneys. Although Baxter disputed the appropriateness of this rate, he did not argue the two attorneys should be compensated at different rates. Yet the trial court, without explanation, compensated Van Vleck's work at a significantly higher rate than Curry's work.[16]

On the record before us, we find no reasonable basis for the difference in compensation assigned by the trial court to Curry and Van Vleck. Judged from the bare bones of their resumes, the two attorneys are nearly indistinguishable. If there is any advantage, it would appear to tilt to Curry by virtue of her additional years of experience. Baxter argues the two can be distinguished by their Martindale-Hubbell attorney ratings, which are "BV" for Curry and "AV" for Van Vleck. As Curry explained, however, her rating was assigned a dozen years ago when she had nine years of experience, at which time it was the highest rating for which she was eligible, and she had never sought to update the rating. Even assuming that a difference in Martindale-Hubbell ratings could overcome Curry's two additional years of experience and justify a different billing rate, Curry's explanation demonstrated the out-of-date rating is not a reliable measure of the quality of her services.

We therefore vacate the portion of the attorney fees order assigning different rates for Curry and Van Vleck and remand for the trial court either to assign the two attorneys the same rate of compensation or to articulate a reasonable basis for any difference.[17]

---

[16] It is possible the court articulated reasons for the distinction at the hearing on the attorney fees motion, but there is no transcript of that hearing in the appellate record.

[17] Because the trial court's finding of the appropriate billing rate for Van Vleck has not been challenged on appeal, that finding stands. Unfortunately, the exact hourly rate awarded by the court for Van Vleck's work is unclear. On page 3 of the court's decision, it set the rate at $325 per hour, while on page 6 it specified a rate of $350 per hour. Yet when the court specified the precise dollar amount of fees awarded to the Bocks on page 7, it compensated for Van Vleck's work at the rate of $344.74 per hour ($11,790 for 34.2 hours' work). If a final figure was ever embodied in a judgment, the parties did not include that judgment in the appellate record. Accordingly, on remand the

25

## 2. The Reduction In Hours Compensated

In addition to awarding the Bocks' attorneys less than their requested rate of $425 per hour, the trial court awarded compensation for far less than the number of hours they billed to the litigation. As noted above, our review of such an award is highly deferential.

The Bocks argue their counsel provided detailed billing records which disclosed "having to respond to six motions, an amended motion, six *ex parte* appearances, multiple reply briefs in support of a single motion, and 15 declarations, and 3 requests for judicial notice." As the Bocks acknowledge, however, they are not entitled to compensation for this work merely because it was performed. It was their burden to persuade the trial court the work was reasonably necessary, both as to the particular tasks performed and the amount of time devoted to them. (*Center for Biological Diversity v. County of San Bernardino* (2010) 188 Cal.App.4th 603, 615 ["The 'burden is on the party seeking attorney fees to prove that the fees it seeks are reasonable.' "].)

The billing records submitted by the Bocks reflect far more work than would be expected for a petition to confirm an arbitration award, which ordinarily involves little investigation and no discovery and requires the briefing of a single set of cross-petitions. The Bocks' attorneys blamed the additional work on Baxter's litigation tactics, which they characterized as wasteful and inefficient. In turn, Baxter contended the Bocks' attorneys' bills were inflated and their work unnecessary. The experienced trial judge, who presided over the entire proceeding, was able to observe the parties' tactics and evaluate the appropriate amount of time and effort required. While we recognize the court awarded compensation for considerably less time than was actually expended, we are not in a position to second-guess its determination of reasonable necessity, let alone to declare its judgment "clearly wrong" (*McKenzie v. Ford Motor Co., supra,* 238 Cal.App.4th at pp. 703–704) or beyond "the bounds of reason" (*Taylor v. Nabors Drilling USA, LP* (2014) 222 Cal.App.4th 1228, 1249).

---

trial court must settle the issue of Van Vleck's rate and either compensate Curry at that rate or articulate a reasonable basis for assigning her a different rate.

## III. DISPOSITION

The judgment of the trial court confirming the arbitration award is affirmed. The amount of the court's award of attorney fees to the Bocks is vacated, and the matter is remanded to the trial court solely for reconsideration of the lodestar compensation rate assigned to Kathryn Curry. The Bocks may recover their costs on appeal. (Cal. Rules of Court, rule 8.278(a)(1), (2).)

27

_____

Margulies, J.

We concur:

_____

Humes, P.J.

_____

Dondero, J.

A142372, A142984, A143689, A144112

Filed 5/24/16

**CERTIFIED FOR PARTIAL PUBLICATION**[*]

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIRST APPELLATE DISTRICT

DIVISION ONE

| | |
|---|---|
| JOSEPH BAXTER,<br><br>      Plaintiff and Appellant,<br><br>v.<br><br>MICHAEL BOCK et al.,<br><br>      Defendants and Respondents. | A142372, A142984, A143689<br><br>(Sonoma County<br>Super. Ct. No. SCV 253350) |
| MICHAEL BOCK et al.,<br><br>      Plaintiffs and Appellants,<br><br>v.<br><br>JOSEPH BAXTER,<br><br>      Defendant and Respondent. | A144112<br><br>(Sonoma County<br>Super. Ct. No. SCV 253366)<br><br>ORDER CERTIFYING OPINION FOR<br>PARTIAL PUBLICATION AND<br>MODIFYING OPINION<br><br>NO CHANGE IN JUDGMENT |

THE COURT:

The opinion in the above-entitled matter filed on May 18, 2016, was not certified for publication in the Official Reports. For good cause, it now appears that the opinion should be published with the exception of parts II.A., C., and D, in the Official Reports pursuant to California Rules of Court, rules 8.1105 and 8.1110, and it is so ordered.

It is further ordered that the opinion filed herein on May 18, 2016, be modified as follows:

---

[*] Pursuant to California Rules of Court, rules 8.1105(b) and 8.1110, this opinion is certified for publication with the exception of parts II.A., C., and D.

1.  On page 1, first sentence in the first paragraph, insert a comma after the word "clients."

There is no change in the judgment.

Dated:

_____

Margulies, J.

2

Trial Court:   Sonoma County Superior Court

Trial Judge:   Hon. Gary Nadler

Counsel:

Sara Baxter; Greines, Martin, Stein & Richland and Kent L. Richland for Plaintiff, Defendant, and Appellant Joseph Baxter.

GCA Law Partners, Kathryn C. Curry and Kenneth R. Van Vleck for Plaintiffs, Defendants, and Appellants Michael Bock and Lorie Bock.