Filed 12/8/21  Herron v. County of L.A. CA2/7

## NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION SEVEN

| | |
|---|---|
| JAMES HERRON,<br><br>　　　　Appellant,<br><br>　　v.<br><br>COUNTY OF LOS ANGELES,<br><br>　　　　Respondent. | B295184<br><br>(Los Angeles County<br>Super. Ct. No. BC659323) |

　　　　APPEAL from a judgment of the Superior Court of Los Angeles County, William F. Fahey, Judge.  Affirmed in part and reversed in part.

　　　　Lucien Law Group and Darryl M. Lucien, Pine Tillett Pine and Norman Pine, Law Office of Maximilian Lee and Maximilian Lee, for Appellant.

　　　　Collins Collins Muir & Stewart, Tomas A. Guterres and Christian E. Foy Nagy, for Respondent.

　　　　_____

## INTRODUCTION

James Herron sued the County of Los Angeles for five causes of action and over $2 million in damages. A jury found for Herron on only two claims and awarded him a total of $200,000. Herron moved for over $2.1 million in attorney fees and $121,000 in costs from the County under Government Code section 12965, subdivision (b) (section 12965(b)). The court awarded Herron $320,000 in attorney fees and $28,472.58 in costs, and Herron appealed.

We affirm in part and reverse in part.

## FACTUAL AND PROCEDURAL BACKGROUND

A. *The Parties and the Trial*

Herron was a temporary union employee for the County, working as a plumber. After he injured his arm on the job, he was released back to the union. Herron sued the County, alleging five causes of action: disability discrimination, failure to engage in the interactive process, failure to accommodate, failure to prevent disability discrimination and violation of the California Family Rights Act.

The matter proceeded to a bifurcated trial. During the liability phase, the jury found in favor of Herron on the disability discrimination and failure to prevent discrimination claims and in favor of the County on the remaining three claims. During the damages phase, Herron sought over $2 million in damages, but the jury awarded Herron $200,000: $180,000 for past economic loss and $20,000 for past non-economic loss.

B. *The Motion for Attorney Fees and Motion To Tax Costs*

Herron moved for attorney fees and costs under section 12965(b). Herron's attorneys, Darryl Lucien and Maximilian Lee, claimed that they worked 1635.7 and 232 hours, respectively, that

Lucien's hourly rate was $600 and Lee's hourly rate was $400 and that their combined lodestar amount was $1,074,220. They requested a multiplier of 2.0, bringing their total attorney fee request to $2,148,440. In his motion, Herron argued a multiplier was necessary given the novel issue presented (whether a temporary union hire for the County was considered an employee under the California Fair Employment and Housing Act (FEHA)), the skill displayed by his counsel, the employment opportunities his counsel had to forgo, the contingent nature of the fee award and the degree of success Herron achieved. Herron also requested $121,465.58 in costs, including expert fees. Herron supported his motion with a 20-page declaration by Lucien, a declaration by Lee and two declarations by plaintiff's employment attorneys, Genie Harrison and V. James DeSimone.[1]

In his declaration, Lucien said he worked as a certified law clerk for the Los Angeles County District Attorney's Office while in law school and conducted about 120 preliminary hearings and one misdemeanor trial. He joined the California Bar in 2004 and has tried 15 jury trials since. He has spoken at various legal seminars. He was approved for an hourly rate of $467 in a court award of attorney fees in a prior case. He increased his hourly rate to $600 after 14 years of practice based on his familiarity with the prevailing hourly rate in the community for work of a similar nature and complexity and based on independent research.

Regarding the number of hours spent on the case, Lucien said the case included 16 witness depositions, five expert depositions, 2,100 pages of deposition testimony, over 2,600 pages

---

[1] Herron does not explicitly reference or appear to rely on the declarations by Lee, Harrison and DeSimone in his appellate briefs.

of documents, 1,500 emails and 11 ex parte motions.  Additionally, he contended it was difficult for Herron to disprove certain defenses asserted by the County according to a focus group poll.  Further, Lucien said the County's defense tactics drove up the time and cost of the litigation.  Specifically, he said one of the County's attorneys, Ryan Chuman, produced the wrong witness for a deposition, objected throughout a deposition, instructed a witness not to answer questions in a deposition, took breaks during depositions, "coach[ed]" deponents on how to answer questions, unilaterally ended a deposition when a witness changed an answer and refused to produce necessary documents.  Lucien also said Chuman objected to depositions that Herron requested and refused to produce the deponents until the discovery cut-off date.

Regarding the request for a multiplier, Lucien said it was necessary to compensate for the contingent risk of the case and the amount of time he and Lee waited for compensation.  Lucien also said he displayed a high level of skill and achieved "a complete vindication of Mr. Herron's civil rights," which he said was an "exceptional result."  Plus, Lucien explained the trial court told counsel that the court estimated that Herron had a 50 percent chance of winning.  Additionally, Lucien said he and Lee are "true solo litigators who do not have any support staff" to assist them; they had to turn away other potential clients.  Lucien also said he proved the County had a "longstanding practice of discriminating against the disabled by terminating their employment, refusing to provide reasonable accommodations to temporary union hire employees, and refusing to engage in the interactive process."

The County opposed the motion, arguing that Herron was not the prevailing party and that the lodestar amount was unreasonable because Lucien's and Lee's hourly rates were

4

insufficiently supported and because their billings were inflated due to duplicative work and delays. Specifically, the County sought to reduce billings associated with duplicative depositions, unsuccessful motions to compel and ex parte motions and communications between counsel. The County challenged Lucien's hourly rate and argued that even if the court decided awarding fees was appropriate, Lucien should be awarded for no more than 800 hours at $400 an hour, with a downward multiplier of .5, making the total recovery $190,000 for Lucien and Lee. The County also argued that Herron's limited success warranted a downward multiplier. Plus, the County filed a motion to tax $113,596.70 in costs for Herron's allegedly excessive court filings, video depositions, duplicative depositions, expert fees, jury consultant fees and audio-visual technology.

The County submitted a 16-page declaration by Chuman, saying the case was overlitigated due to excessive and meritless motions and repetitive and duplicative depositions.

Regarding motions, Chuman said Herron brought eight ex parte motions, but only one was successful. One motion was taken off calendar because Lucien had failed to meet and confer properly, and another was denied for failure to show good cause or an emergency existed. For two motions, Lucien had provided a large volume of documents to the court without any direction as to where the court could find evidence that good cause existed within the exhibits. Three ex parte appearances were noticed and canceled the morning of the hearing, one just 20 minutes before the hearing.

Regarding depositions, Chuman said the case was delayed because Lucien waited over five months after he knew about a percipient witness to notice the first percipient witness deposition. Lucien asked repetitive questions during depositions. Lucien's

inflexibility and unwillingness to accommodate witnesses made certain depositions longer than necessary. Four depositions took longer than one day to complete. For example, Deputy Esmeralda Lopez testified that she had no personal knowledge of the reasons behind Herron's release and that she never worked with or knew Herron. But Lucien still spent two days deposing her. Lucien asked Lopez twice to "review a binder filled with over 300 documents to see if she could identify if one document that was previously produced was within that production." Lucien was frustrated when Lopez provided the same response, and he suspended the deposition after an hour and a half and scheduled another day for deposition. Another example was when Herron's deposition notice for the person most knowledgeable regarding the County's Responses to Special Interrogatories Set One did not identify what issues he intended to cover with the witness. Chuman brought Craig Castanon, a "key witness." But Lucien said he wanted somebody who "could testify as to how Deputy Esmeralda Lopez acquired information to respond to Plaintiff's Special Interrogatories (Set l) as opposed to an individual, such as Craig Castanon, who could testify as to the factual substance of the responses." Instead of deposing Castanon, Herron suspended the deposition and postponed the deposition of another "person most knowledgeable" the following day. Chuman offered several dates to reschedule both, but none were acceptable to Lucien. Chuman proposed another set of dates and did not receive a response from Lucien.

According to Chuman, Lucien did not try to resolve discovery disputes. Chuman said Lucien unilaterally set deposition dates. When the County objected because the witnesses were not available during the requested times, and the County offered alternative dates, Lucien said he would move ex parte to compel

6

attendance at depositions. Lucien was unwilling to provide dates for Herron's deposition, forcing Chuman to file an ex parte motion, which the court granted.

C.   *The Hearing*

During the motion hearing, the trial court questioned Lucien's requested hourly rate. Lucien acknowledged that no judge had approved his requested $600 hourly rate. The court explained it has "reviewed probably a hundred plus attorney's fee motions," and it usually sees Lucien's requested rate from lawyers at "the fairly big firms, perhaps different law schools, order of the coif, editor of law reviews, clerk for a federal judge, that kind of resume, which [the court] [does not] see here." The court noted, "I'm very sensitive to hourly rates that are selected by counsel when [they] don't have that kind of background and really no empirical data to support it." The court said in its experience, attorneys "who went to Harvard or Yale typically are paid at a much higher level" than those who went to other law schools because "it reflects, perhaps, an intelligence level beyond this court's intelligence level and a dedication and a drive and a capability that [the court] [does not] otherwise see with some other lawyers." The court concluded that "background, experience, number of years, approval by judges of those hourly rates, et cetera" are all "factors that [the] court has in mind."

Then, the court addressed the request for a multiplier, asking whether "a multiplier is only for cases of exceptional result or novel or complex issues?" Lucien explained that there are more factors the court must consider, including "the fact that the attorneys will not get paid for their work and the delay in payment." The court noted, "here, there was no exceptional

7

result," since the damages award was only 10 percent of what Herron asked for.

Next, the court addressed the total number of hours claimed, saying, "One of the things that struck me throughout the time period that this case was pending is that it was overlitigated." The court noted that Herron filed ex parte motions "on discovery issues that [the court] thought should have been properly resolved between a respectful and professional counsel." The court reiterated its belief that "a lot of the hours expended here and efforts that [Herron] put in, [were] as if this was some sort of a federal class action lawsuit involving multiple parties and players, it was just, to sum it up, . . . overly litigated."

The court explained, "I think there were unnecessary depositions. There are multiple dates of depositions. There was unnecessary ex parte litigation. . . . This is a fairly straightforward wrongful termination case. . . . Rarely have I seen a case litigated to this extent." Specifically, the court noted, "There seems to have been a number of examples in the record of [Herron's attorneys] coming close to badgering witnesses when witnesses did not respond in the fashion that you believed that they should respond." The court, "[h]aving presided over thousands of cases over 20 years," noted that "it's very rare and generally unnecessary to have a deposition go longer than the statutory time limit or more than one day."

Finally, the court addressed the request for expert fees, saying, "[t]he experts were not court ordered[,] [s]o the expert witness fees are likely to be taxed." The court asked, "Doesn't the Code [of Civil Procedure] say [the experts] have to be experts ordered by the order?" Herron answered that the court has discretion to award expert fees in this case under section 12965(b). The Court replied, "So that's—This court has to make a

8

determination—in other words, you don't get it as a matter of right. This court has to exercise its independent judgment, having presided over the case, as to whether or not those expert's fees were reasonable and necessary. We agree on that, apparently."

D. *The Court's Order*

The court filed its order one week after the hearing. The court awarded Herron $320,000 in attorney fees and $28,472.58 in costs.

The court began by explaining it "seriously considered whether to award attorneys fees at all to plaintiff. . . . This is not only because plaintiff prevailed on only two claims and received just about 10 percent of the amount he sought from the jury, but because plaintiff's counsel grossly over-litigated this case prior to trial." The court found Chuman's declaration "accurately summarizes plaintiff's counsel's actions with respect to discovery abuses, including deposition conduct and unnecessary delays." The court wrote, "having presided over multiple unnecessary discovery disputes, the Court [gave] little weight to Lucien's version of events." The court noted Herron's counsel "waited some nine months after the case was filed to even notice the depositions of defendant's five key witnesses, and this was only after defendant had filed a motion for summary judgment." The court also noted Herron's counsel "brought eight ex parte applications, seven of which were entirely denied and one which was mostly denied." The court also found "[t]he excessive nature of the attorneys' fee demand also reflects adversely on the credibility of plaintiff's counsel's claims."

The court approved Lee's requested rate of $400 per hour. But the court reduced Lucien's rate from $600 to $500 because attorneys with similar backgrounds and trial experience had been

9

approved for $400-$550 per hour and because of Lucien's pretrial and trial skills. Specifically, the court noted "no judge has ever approved this [$600] rate" for Lucien. The court drew on its experience reviewing over 100 fee motions over 15 years, which made the court familiar with the reasonable hourly rates of attorneys, ranging from solo practitioners to those from national law firms. The court also noted it had "seen and approved hourly rates of $400-550 for attorneys with Lucien's background and trial experience." The court found, "Given Lucien's pre-trial and trial skills . . . a rate of $500/hour is reasonable."

Then, the court reduced the hours from 2076 to 700 because the court found that Herron achieved limited success, overlitigated the case before trial and padded the hours. Specifically, the court commented the requested hours are "grossly excessive for this relatively straightforward employment case." The court explained its view that the hours were excessive by comparing Herron's case to a recent employment case the court presided over that was "much more difficult," where the jury awarded a $1.8 million verdict. There, the lead attorney, who was "one of the most experienced, well-known and successful in California," only billed 228 hours, with the junior attorney billing 584 hours, for a total of 812. The court found, "[A] reasonable number of hours for lead attorney Lucien should be no more than 400, and for the second chair Lee, 300."

Next, the court denied Herron's request for an upward multiplier because it found the case was not difficult or complex, the amount at issue was modest, the jury award was at the low end of verdicts and the attorney's rates compensated them for their contingency risk and skill. Specifically, the court explained, "Plaintiff has not carried his burden." "This was a run-of-the-mill

employment case[2] which had no difficult or complex issues. . . . Further, the amount at issue was modest when compared to other employment cases over which this Court has presided. Plaintiff's lawyers were competent, but not highly skilled. And the result obtained was also at the low end of jury verdicts in Los Angeles. Finally, the market rate of plaintiff's attorneys adequately compensates for their contingency risk and skill." The court also denied the County's request for a downward multiplier.

---

[2] Before the closing argument on liability and outside the presence of the jury, the court said, "The very narrow issue of whether somebody hired as a union hall temporary employee was entitled to accommodations, interactive process and leave. I think that's a very interesting narrow question. [¶] And I can see why the County has vigorously defended this, because it probably has very broad public policy implications for maybe hundreds, if not thousands of hires." The court also said, "I think this may be a case of first impression, whether or not a union temp such as Mr. Herron is an employee."

However, the court changed its mind over three months, during which it presided over the damages trial, jury instructions, closing arguments and jury verdicts on both liability and damages and briefing on the motion for attorney fees. During the hearing on the motion for attorney fees, the court admonished Herron for attempting to frame his case as having broad policy implications. When Herron tried to frame the case as being about "the Los Angeles County pattern and practice, and their policy of not providing reasonable accommodations [or] interactive process," the trial court interrupted and explained, "Actually, it wasn't at all. And [the court] admonished you in front of the jury when you attempted to expand the nature of this litigation beyond your clients to some policy and to send a message, et cetera. This case was about one individual who alleged he was wrongfully terminated. [The court] cannot agree with your characterization."

Finally, the court reduced Herron's requested costs from over $121,000 to $28,472.58. Among the costs cut, the court denied Herron's request for expert fees. Specifically, "[P]laintiff is not entitled to be reimbursed for experts not ordered by the court . . . . The trial court also has the discretion to disallow costs for items which are only a convenience or beneficial, as opposed to necessary, for trial preparation." The court denied "expert witness costs in the amount of $34,325."

## DISCUSSION

Herron argues the trial court abused its discretion by reducing Lucien's hourly rate to calculate the lodestar, by reducing the total attorney hours to calculate the lodestar, by not applying an upward multiplier to the lodestar and by not awarding expert costs.

We agree with Herron on expert costs but disagree with him on attorney fees.

A. *Section 12965(b)*

FEHA, governed by Government Code section 12900 et seq., was enacted to "safeguard the rights of all persons to seek, obtain, and hold employment without discrimination on account of various characteristics, which now include race, religion, color, national origin, ancestry, physical disability, mental disability, medical condition, marital status, sex, age, and sexual orientation." (*Chavez v. City of Los Angeles* (2010) 47 Cal.4th 970, 984 (*Chavez*).)

Under section 12965(b), a party may bring a civil action for damages resulting from violations of FEHA and seek attorney fees and costs: "In civil actions brought under this section, the court, in its discretion, may award to the prevailing party, including the department, reasonable attorney's fees and costs, including expert

12

witness fees." This statute creates an asymmetrical standard for awarding fees and costs: While "a prevailing plaintiff should ordinarily receive his or her costs and attorney fees unless special circumstances would render such an award unjust[,] . . . [a] prevailing defendant, however, should not be awarded fees and costs unless the court finds the action was objectively without foundation when brought, or the plaintiff continued to litigate after it clearly became so." (*Williams v. Chino Valley Independent Fire Dist.* (2015) 61 Cal.4th 97, 105 (*Williams*), italics and citation omitted.)

    1.    *Attorney Fees*

"In deciding whether to, and how to, award fees under [Government Code] section 12965, subdivision (b), courts will look to the rules set forth in cases interpreting [Code of Civil Procedure] section 1021.5." (*Chavez, supra*, 47 Cal.4th at p. 985.) "Under Code of Civil Procedure section 1021.5, if a court determines that attorney fees should be awarded, computation of those fees is based on the lodestar adjustment method as set forth in *Serrano v. Priest* (1977) 20 Cal.3d 25 [(*Serrano*)]." (*Ibid.*) The lodestar is determined by multiplying a reasonable rate for each attorney by a reasonable number of hours worked by that attorney. (*Ibid.*) The lodestar may then be "adjusted upward or downward" with an optional multiplier. (*Ibid.*)

The moving party bears the burden "to persuade the trial court the work was reasonably necessary, both as to the particular tasks performed and the amount of time devoted to them." (*Baxter v. Bock* (2016) 247 Cal.App.4th 775, 793 (*Baxter*); see *Roth v. Plikaytis* (2017) 15 Cal.App.5th 283, 290 [explaining the party seeking attorney fees ""'bear[s] the burden of establishing entitlement to an award and documenting the appropriate hours

13

expended and hourly rates"""].)  On the other hand, "[i]n challenging attorney fees as excessive because too many hours of work are claimed, it is the burden of the challenging party to point to the specific items challenged, with a sufficient argument and citations to the evidence.  General arguments that fees claimed are excessive, duplicative, or unrelated do not suffice."  (*Premier Medical Management Systems, Inc. v. California Ins. Guarantee Assn.* (2008) 163 Cal.App.4th 550, 564.)

"In FEHA actions, attorney fee awards, which make it easier for plaintiffs of limited means to pursue meritorious claims [citation], 'are intended to provide "fair compensation to the attorneys involved in the litigation at hand and encourage [ ] litigation of claims that in the public interest merit litigation.""" (*Chavez, supra*, 47 Cal.4th at p. 984.)  However, "the ultimate goal is 'to determine a "reasonable" attorney fee, and not to encourage unnecessary litigation of claims that serve no public purpose either because they have no broad public impact or because they are factually or legally weak.'"  (*Id.* at p. 985.)

2.  *Costs*

Under Civil Code section 1032, subdivision (b), "a prevailing party is entitled as a matter of right to recover costs in any action or proceeding," unless specified otherwise by statute.

Under Government Code section 12965, subdivision (b), a trial court has the discretion to award the prevailing party reasonable costs, including expert witness fees.  But a prevailing defendant "shall not be awarded fees and costs unless the court finds the action was frivolous, unreasonable, or groundless when brought, or the plaintiff continued to litigate after it clearly became so."  "By making a cost award discretionary rather than mandatory, Government Code section 12965 expressly excepts

14

FEHA actions from Code of Civil Procedure section 1032's mandate for a cost award to the prevailing party." (*Williams*, *supra*, 61 Cal.4th at p. 114.) "'[T]rial courts have a duty to determine whether a cost is reasonable in need and amount.'" (*Acosta v. SI Corp.* (2005) 129 Cal.App.4th 1370, 1380 (*Acosta*).)

Because the court has discretion to award or deny costs in a FEHA case, a prevailing party must move for costs just as it would attorney fees. (See *Anthony v. City of Los Angeles* (2008) 166 Cal.App.4th 1011, 1016.)

B.    *Standard of Review*

  1.    *Attorney Fees*

We review an attorney fee award for abuse of discretion. (*Laffitte v. Robert Half Internat. Inc.* (2016) 1 Cal.5th 480, 488.) In reviewing the award, we are guided by well-established principles. "[T]he awarding of attorney fees and the calculation of attorney fee enhancements are highly fact specific matters best left to the discretion of the trial court." (*Graham v. DaimlerChrysler Corp.* (2004) 34 Cal.4th 553, 581.) "The "'experienced trial judge is the best judge of the value of professional services rendered in his court, and while his judgment is of course subject to review, it will not be disturbed unless the appellate court is convinced that it is clearly wrong.'"" (*Ketchum v.* Moses (2001) 24 Cal.4th 1122, 1133 (*Ketchum*).) "An appellate court will interfere with the trial court's determination of the amount of reasonable attorney fees only where there has been a manifest abuse of discretion."[3]

---

[3]    Herron claims the abuse of discretion standard applicable in an attorney fee appeal requires stricter scrutiny than the normal abuse of discretion standard based on a sentence in *Horsford v. Board of Trustees of California State University* (2005) 132

15

(*Heritage Pacific Financial, LLC v. Monroy* (2013) 215 Cal.App.4th 972, 1004 (*Heritage*).)

"We review any factual findings by the trial court in connection with the ruling under the substantial evidence standard." (*Sweetwater Union High School Dist. v. Julian Union Elementary School Dist.* (2019) 36 Cal.App.5th 970, 981.)

2.      *Costs*

"Whether a cost item was reasonably necessary to the litigation presents a question of fact for the trial court and its decision is reviewed for abuse of discretion." (*Acosta, supra,* 129 Cal.App.4th at p. 1380.) "'Absent an explicit statement by the trial court to the contrary, it is presumed the court properly exercised its legal duty.'" (*Ibid.*)

Whether a court applied the proper criteria for a cost award is a question of law reviewed de novo: "'"[D]e novo review of such a trial court order is warranted where the determination of whether the criteria for an award of . . . costs in this context have been satisfied amounts to statutory construction and a question of law."'" (*Mountain Air Enterprises, LLC v. Sundowner Towers, LLC* (2017) 3 Cal.5th 744, 751.)

---

Cal.App.4th 359, 393 (*Horsford*): "[A] reasoned decision based on the reasonable view of the scope of discretion is still an abuse of judicial discretion when it starts from a mistaken premise." But *Horsford* did not increase the scrutiny of attorney fee orders. *Horsford* merely stated the abuse of discretion standard in a different way. (See *Chavez, supra,* 47 Cal.4th at p. 989 [reviewing trial court's decision denying attorney fees in FEHA action for abuse of discretion].)

C.    *The Trial Court Did Not Abuse Its Discretion in Calculating the Attorney Fee Award*

1.    *Rate*

a.    *The trial court did not err in determining a reasonable rate for Lucien*

The reasonable hourly rate of an attorney depends on several factors, including "the level of skill necessary, time limitations, the amount to be obtained in the litigation, the attorney's reputation, and the undesirability of the case." (*Ketchum, supra,* 24 Cal.4th at p. 1139.) "The court may rely on its own knowledge and familiarity with the legal market in setting a reasonable hourly rate." (*Heritage, supra*, 215 Cal.App.4th at p. 1009.)

The trial court found "a rate of $500/hour is reasonable" for Lucien. The court reduced Lucien's rate from the $600 he requested because of his "pre-trial and trial skills" and because the court had "seen and approved hourly rates of $400-550 for attorneys with Lucien's background and trial experience." In determining $500 per hour was a reasonable rate for Lucien, the court noted, "no judge has ever approved [Lucien's $600] rate." The court reviewed Lucien's education, trial experience, practice and accomplishments. The court explained, "Lucien is a sole practitioner," "[h]e graduated from Glendale University College in 2002," he has tried "one misdemeanor trial while a clerk with the District Attorney's office and 15 civil trials," and "[h]e has spoken at three CLE seminars." The court compared Lucien's background and trial experience against that of other attorneys in the legal market. The court knew the legal market because it had reviewed over 100 fee motions in over 15 years, from solo practitioners to those working at national law firms. The court saw Lucien's pretrial and trial skills when the court presided over the case.

17

The factors the court relied on were proper. (See, e.g., *Stratton v. Beck* (2017) 9 Cal.App.5th 483, 496 [finding no abuse of discretion in court setting attorney's hourly rate based on comparison of rates from similarly experienced attorneys in same field and area]; *Children's Hospital & Medical Center v. Bonta* (2002) 97 Cal.App.4th 740, 783 [affirming award where "the hourly rates allowed by the trial court are within the range of reasonable rates charged by and judicially awarded comparable attorneys for comparable work"].)

### b. *Herron's argument to the contrary is unpersuasive*

Herron argues the trial court reduced Lucien's hourly rate based on his intelligence level and dedication because at the hearing, the court said, in its experience, attorneys "who went to Harvard or Yale typically are paid at a much higher level" than those who went to other law schools, because "it reflects, perhaps, an intelligence level beyond this court's intelligence level and a dedication and a drive and a capability that [the court] [does not] otherwise see with some other lawyers." But Herron takes the court's comment out of context. The court was comparing Lucien's background and experience with other attorneys in the legal market as it was allowed to do. The court explained, "[B]ackground, experience, number of years, approval by judges of those hourly rates, et cetera. All of those are factors that this court has in mind."

18

2.      *Hours*

      a.      *The trial court did not err in determining a reasonable number of hours for Herron's attorneys*

"[A]bsent circumstances rendering the award unjust, an attorney fee award should ordinarily include compensation for all the hours reasonably spent, including those relating solely to the fee." (*Ketchum*, *supra*, 24 Cal.4th at p. 1133.) "'Reasonably spent' means that time spent 'in the form of inefficient or duplicative efforts is not subject to compensation.'" (*Horsford*, *supra*, 132 Cal.App.4th at p. 394.)

The trial court found "a reasonable number of hours for lead attorney Lucien should be no more than 400, and for second chair Lee, 300." The court reduced the total hours to 700 from the 2,076 Herron's counsel requested because the court found that Herron "grossly over-litigated this case prior to trial," that "the bills were padded," and that Herron achieved limited success.

First, overlitigation or "'"padding" in the form of inefficient or duplicative efforts is not subject to compensation.'" (*Ketchum*, *supra*, 24 Cal.4th at p. 1132.) The trial court's finding that Herron overlitigated the case is supported by substantial evidence, including the declaration by Chuman and the court's observations from presiding over the case. In his declaration, Chuman said that almost all of Herron's ex parte motions were meritless, that some of Herron's depositions were unnecessary and long and that Herron did not try to resolve discovery disputes. The court agreed with Chuman: "Chuman accurately summarized plaintiff's counsel's actions with respect to discovery abuses, including deposition conduct and unnecessary delays." The court gave "little weight to Lucien's version of the facts" because it had "presided over multiple unnecessary disputes." According to the court,

Herron's "counsel brought eight ex parte applications, seven of which were entirely denied and one which was mostly denied." Herron claims he received relief on four of his eight ex parte applications. By our calculation based on the appellate record, Herron filed six ex parte applications, with only one application granted and another granted in part. But no matter what, the trial court's point still stands: Herron filed several meritless ex parte motions.

Although the trial court awarded Herron attorney fees for fewer hours than requested, we do not find the court abused its discretion based on the record before us. Having presided over the entire case, including discovery disputes, the experienced court was well-positioned to determine if Herron's attorneys overlitigated or padded their hours. (See *Baxter*, *supra*, 247 Cal.App.4th at p. 794 ["The experienced trial judge, who presided over the entire proceeding, was able to observe the parties' tactics and evaluate the appropriate amount of time and effort required. While we recognize the court awarded compensation for considerably less time than was actually expended, we are not in a position to second-guess its determination of reasonable necessity, let alone to declare its judgment 'clearly wrong' [citation] or beyond 'the bounds of reason.'"].)

Second, "[a] fee request that appears unreasonably inflated is a special circumstance permitting the trial court to reduce the award or deny one altogether." (*Serrano v. Unruh* (1982) 32 Cal.3d 621, 635 (*Serrano II*).) The trial court was in the best position to determine if Herron's requested hours were inflated. (See *Baxter*, *supra*, 247 Cal.App.4th at p. 794.) The court explained that it had experience reviewing over 100 fee motions in more than 15 years and that the hours claimed by Herron were

20

"grossly excessive for this relatively straightforward employment case."

Finally, a court can reduce an attorney fee award if a prevailing party obtained limited success under *Hensley v. Eckerhart* (1983) 461 U.S. 424, 436, superseded, in part on other grounds, by the Prison Litigation Reform Act (*Hensley*).[4]  (See also *Sokolow v. County of San Mateo* (1989) 213 Cal.App.3d 231, 248 [explaining "the degree or extent of appellants' success in obtaining the results which they sought must be taken into consideration in determining the extent of attorney fees which it would be *reasonable* for them to recover"].)  In cases involving limited success, California courts have adopted a two-step framework.  (*Environmental Protection Information Center v. Department of Forestry & Fire Protection* (2010) 190 Cal.App.4th 217, 238 (*Environmental Protection*).)

In the first step, a court must answer the question:  Did "the plaintiff fail to prevail on claims that were unrelated to the claims on which he succeeded?"  (*Hensley, supra,* 461 U.S. at p. 434.)  Claims are related if their attorney fees are intertwined.  (See *Harman v. City and County of San Francisco* (2007) 158 Cal.App.4th 407, 424 ["Where the court considered the fees intertwined, the successful and unsuccessful claims were found related, as *Hensley* directs."].)

If the successful and unsuccessful claims are related, in the second step, the court must answer the question: "[D]id the plaintiff achieve a level of success that makes the hours reasonably expended a satisfactory basis for making a fee award?"

---

[4]    In interpreting and applying FEHA's attorney fee provisions, California courts have looked to federal decisions involving Title VII fees for guidance.  (See *Chavez, supra,* 47 Cal.4th at p. 985.)

(*Hensley*, *supra*, 461 U.S. at p. 434.)  In the second step, the court "focus[es] on the significance of the overall relief obtained by the plaintiff in relation to the hours reasonably expended on the litigation."  (*Ibid*.)  In a case of limited success, "the product of hours reasonably expended on the litigation as a whole times a reasonable hourly rate may be an excessive amount."  (*Id*. at p. 436.)  The court's calculation "may attempt to identify specific hours that should be eliminated, or it may simply reduce the award to account for the limited success."  (*Id*. at pp. 436-437.)

Here, the court applied both steps of the *Hensley* test correctly.  For the first step, it is uncontroverted that Herron's successful and unsuccessful claims are related.  For the second step, in its order, the court found Herron did not achieve a level of success that justified the requested hours.  The court noted Herron "prevailed on only two claims," "received just about 10% of the amount he sought," and "the result obtained was also at the low end of jury verdicts in Los Angeles."  Plus, it appears Herron did not obtain any of the injunctive relief he sought, which included being reinstated to his prior position, requiring supervisors to undergo training relating to the treatment of disabled employees, and requiring the County to enforce policies in a non-discriminatory fashion.  (*Environmental Protection*, *supra*, 190 Cal.App.4th at p. 238 ["The trial court may reduce the amount of the fee award 'where a prevailing party plaintiff is actually unsuccessful with regard to certain objectives of its lawsuit.'"].)  As the court said during the hearing, "Here, there was no exceptional result."

22

### b. *Herron's arguments to the contrary are unpersuasive*

Herron argues that public policy and the purpose of FEHA cut against the trial court's decision to reduce his attorney fee award. But "under the FEHA, the ultimate goal is 'to determine a "reasonable" attorney fee, and not to encourage unnecessary litigation of claims that serve no public purpose . . . because they have no broad public impact.'" (*Chavez, supra*, 47 Cal.4th at p. 990.) Herron cannot claim that his success on his two discrimination claims "had any broad public impact or resulted in significant benefit to anyone other than himself." (*Ibid.*)

Herron claims, "Indeed, Mr. Herron's trial success has doubtless led the County to revisit its policy of denying employees like Mr. Herron FEHA's protections." But he fails to substantiate this argument with record citations or any explanation. (See *Nwosu v. Uba* (2004) 122 Cal.App.4th 1229, 1246.) He points to the trial court's comment that his case may have broad policy implications. But he ignores that the court changed its mind several months later after overseeing numerous court proceedings, including the damages trial, jury instructions, closing arguments and jury verdicts on liability and damages, and the briefings on the motion for attorney fees. In fact, at the motion hearing, the court disagreed with Herron's characterization of the litigation as a public policy case. In the court's order, the court described the case as a run-of-the-mill employment case.

Herron takes issue with the court's consideration of the damages recovered at trial.[5] While it is true that "attorney fees

---

[5] Herron also argued that he received almost all his damages: "Even if Mr. Herron had succeeded on all five of his causes of

need not be strictly proportionate to the damages recovered" (*Chavez, supra*, 47 Cal.4th at p. 989), courts have routinely considered the total amount recovered in determining whether to reduce attorney fees. In fact, the California Supreme Court in *Chavez* affirmed a complete denial of attorney fees in a FEHA case because the trial court found the requested hours were "grossly inflated when considered in light of the single claim on which plaintiff succeeded, the amount of damages awarded on that claim, and the amount of time an attorney might reasonably expect to spend in litigating such a claim." (*Id.* at p. 991.) Here, the court similarly found that the hours were "grossly excessive," that Herron succeeded on only two claims, that the jury awarded Herron only 10 percent of the damages he sought and that only 700 of Herron's 2,076 requested hours were reasonable.[6]

---

action, he would have at most received nominally, two weeks more damages . . . . Hence, while it is true that Mr. Herron failed to obtain relief in three of his five claims, this cannot be said to be limited success because he nevertheless obtained complete relief for his damages." Not true. Herron asked the jury for more than $2 million in damages, but it only awarded him $200,000.

[6] Herron relies on *Warren v. Kia Motors America, Inc.* (2018) 30 Cal.App.5th 24, 37, where the court wrote, if "the reasons for the [fee] reduction include tying the fee award to some proportion of the buyer's damages recovery, the court abuses its discretion." But the court prefaced this statement with, "when a trial court applies a substantial negative multiplier to a *presumptively accurate lodestar* attorney fee amount, the court must clearly explain its case-specific reasons for the percentage reduction." (*Ibid.*, italics added.) In this case, Herron's attorney fee recovery was reduced because the court had a different view as to how many hours were reasonably incurred, not because it reduced the final lodestar attorney fee amount by a percentage. Plus, the court

Herron complains about the trial court's comments, which he takes out of context. He argues because the court noted in its order that precedent "*mandates* a substantial reduction" of the attorney fee award, the court incorrectly believed it was *required* to reduce the fees based on limited success. Not true. Immediately after the quoted statement, the court acknowledged its discretion to decide not just the amount of attorney fees, but whether to award any at all, when it said, "this Court has seriously considered whether to award attorney fees at all to plaintiff."

Herron also takes out of context a comment the court made at the hearing: "Having presided over thousands of cases over 20 years, . . . it's very rare and generally unnecessary to have a deposition go longer than the statutory time limit or more than one day." As Herron points out, the statutory time limit for depositions does not apply in employment cases. (*Williams*, *supra*, 61 Cal.4th at p. 113, fn. 3.) But the court was discussing its concern about how long the depositions took to complete overall; the court never said it was reducing Herron's hours based on a mistaken belief that a statutory time limit applied.

Herron argues that the County failed to adequately challenge his time entries and that the court failed to adequately explain its fee reduction. But the County met its burden. The County's motion argued that Herron's ex parte motions and conduct during discovery and depositions padded Herron's fees. The County identified delayed depositions and ex parte motions and included a declaration by Chuman explaining the conduct in detail with exhibits of email exchanges between the parties'

---

here did not reduce its fee award by making it proportionate to the amount Herron recovered.

attorneys.  Likewise, the court sufficiently explained its grounds for reducing Herron's attorney fees.  A "court may attempt to identify specific hours that should be eliminated, or *it may simply reduce the award to account for the limited success*." (*Hensley*, *supra*, 461 U.S. at pp. 437-438, italics added.)  And "[w]hen confronted with hundreds of pages of legal bills, trial courts are not required to identify each charge they find to be reasonable or unreasonable, necessary or unnecessary. . . .  A reduced award might be fully justified by a general observation that an attorney overlitigated a case or submitted a padded bill or that the opposing party has stated valid objections." (*Gorman v. Tassajara Development Corp.* (2009) 178 Cal.App.4th 44, 101.)  In its order, the court explained it reduced Herron's hours because the court found Herron achieved limited success, he overlitigated his case, and the hours he requested were padded.

Herron also points out the County, in its opposition, stated that Lucien should be awarded no more than 800 hours, which is double the trial court's award.  First, such a statement does not establish that the court abused its discretion because the court itself is required to determine the number of hours reasonably spent on the case.  Second, the County did not concede Lucien reasonably expended 800 hours on the case.  The County requested he be awarded no fees and fees for no more than 800 hours in the alternative.  Third, Lucien would have received less money if the court had awarded Herron fees following the County's recommendation.  That is because the County also suggested that Lucien's hourly rate be set at $400 an hour and a downward multiplier of 0.5 be applied, bringing Lucien's attorney fee award to $160,000, which is $40,000 less than what the trial court awarded.

Finally, Herron argues the court failed to consider how the court's errors accounted for Herron's limited success and "needlessly complicated the litigation." The errors he complains about concern two jury instructions that were given and another modified instruction that was not. But Herron never raised this instructional error argument during the briefing on attorney fees in the trial court. (*In re Campbell* (2017) 11 Cal.App.5th 742, 756 ["We will not address arguments raised for the first time on appeal."].) Even if the argument had been properly raised, Herron fails to explain how these alleged errors led the court to abuse its discretion during its fee award calculations.

    3.     *Multiplier*

          a.     *The trial court did not abuse its discretion in denying a multiplier*

After the lodestar figure has been calculated, a trial court may apply an optional upward multiplier to the lodestar figure based on several factors. (*Ketchum, supra*, 24 Cal.4th at p. 1138.) These factors include "(1) the novelty and difficulty of the questions involved, (2) the skill displayed in presenting them, (3) the extent to which the nature of the litigation precluded other employment by the attorneys, (4) the contingent nature of the fee award." (*Id.* at p. 1132.) "[T]he trial court is not *required* to include a fee enhancement to the basic lodestar figure for contingent risk, exceptional skill, or other factors, although it retains discretion to do so in the appropriate case; moreover, the party seeking a fee enhancement bears the burden of proof." (*Ibid.*) "'In reviewing a challenged award of attorney fees and costs, we presume that the trial court considered all appropriate factors in selecting a multiplier and applying it to the lodestar figure. [Citation.] This is in keeping with the overall review standard of abuse of discretion, which is found only where no

27

reasonable basis for the court's action can be shown.'" (*Taylor v. Nabors Drilling USA, LP* (2014) 222 Cal.App.4th 1228, 1249–1250.)

The trial court denied Herron's request for a multiplier because Herron had "not carried his burden in this regard." The court found that Herron's case was "a run-of-the-mill employment case which had no difficult or complex issues," that "the amount at issue was modest when compared to other employment cases over which th[e] Court has presided," that "the result obtained was also at the low end of jury verdicts in Los Angeles," that Herron's "lawyers were competent, but not highly skilled" and that "the market rate of plaintiff's attorneys adequately compensates for their contingency risk and skill." These were reasonable bases for denying the multiplier. (See *Ketchum*, *supra*, 24 Cal.4th at pp. 1138-1139 ["Of course, the trial court is not *required* to include a fee enhancement to the basic lodestar figure for contingent risk, exceptional skill, or other factors, although it retains discretion to do so in the appropriate case . . . . In each case, the trial court should consider . . . the degree to which the relevant market compensates for contingency risk, extraordinary skill, or other factors under *Serrano*[ ]. We emphasize that when determining the appropriate enhancement, a trial court should not consider these factors to the extent they are already encompassed within the lodestar."].)

### b.    *Herron's arguments to the contrary are unpersuasive*

Herron argues the court erred in not applying a multiplier because there is no extraordinary circumstance to warrant not using a multiplier and because the court failed to adequately account for the contingency risk. But "[a] fee request that appears

28

unreasonably inflated is a special circumstance permitting the trial court to reduce the award or deny one altogether." (*Serrano II, supra,* 32 Cal.3d at p. 635.) The trial court determined the fee request here was unreasonably inflated, meaning there was an extraordinary circumstance to warrant denying the award *entirely.* Plus, the court found the market rate for Herron's attorneys "adequately compensates for their contingency risk and skill." As a result, applying a multiplier would have been an "unfair double counting" and "unreasonable." (*Ketchum, supra,* 24 Cal.4th at p. 1139.)

Herron also points out that during the hearing, the court asked, "Isn't it true that a multiplier is only for cases of exceptional result or novel or complex issues," to suggest the court misunderstood the law as it relates to multipliers. But the court's order, citing *Ketchum* and reviewing the relevant factors for a multiplier, dispels any concern that the court misunderstood the applicable law.

Lastly, Herron relies on the court's earlier comment that the case may have broad policy implications. But he does not reconcile that comment with the court's later remarks after presiding over more of the litigation. Specifically, the court found the case did not involve broad policy implications but rather was a simple employment case.

D.    *The Trial Court Erred in Denying Herron's Request for Expert Fees*

It appears the trial court did not understand it had the discretion to award Herron expert fees even if the expert was not court ordered. In its order, the trial court denied Herron's request for expert fees because the "plaintiff is not entitled to be reimbursed for experts not ordered by the court" and "[t]he trial

court also has the discretion to disallow costs for items which are only a convenience or beneficial, as opposed to necessary, for trial preparation." The court was referencing and cited a case concerning Code of Civil Procedure section 1033.5, subdivision (b)(1), which limits reimbursement of expert fees awarded under Code of Civil Procedure section 1032, subdivision (b), to fees for experts ordered by the court or otherwise expressly authorized by law. But Herron did not seek costs under the Code of Civil Procedure, sections 1032 and 1033.5. Instead, he sought costs under section 12965(b), which does not limit the reimbursement of expert fees to experts ordered by the court.

That the trial court may have acknowledged its discretion during oral argument is insufficient. During the hearing, the trial court asked, "Doesn't the Code [of Civil Procedure] say [the experts] have to be experts ordered by the order?" Lucien answered the court has discretion to award expert fees in this case under section 12965(b). The court said, "This court has to exercise its independent judgment, having presided over the case, as to whether or not those expert's fees were reasonable and necessary. We agree on that, apparently." But "'a judge's comments in oral argument may never be used to impeach the final order, however valuable to illustrate the court's theory they might be under some circumstances.'" (*Silverado Modjeska Recreation & Park Dist. v. County of Orange* (2011) 197 Cal.App.4th 282, 300) This is because "'[a]n oral ruling is subject to varying memories and may not be clear or specific. . . . A court may change its ruling until such time as the ruling is reduced to writing and becomes the [final] order of the court.'" (*Ibid.*)

The County argues Herron "has not shown *but for* the application of . . . section 12965(b), he would certainly have been awarded his expert witness fees" and has not shown how experts

30

improved his case.  The County misses the point.  The issue on appeal is not whether Herron met his burden of introducing sufficient evidence to justify being awarded expert fees.  Instead, the issue is whether the trial court understood it had the discretion to award expert fees irrespective of whether the expert was court ordered.

## DISPOSITION

The attorney fee order under section 12965(b) is affirmed. The cost award is reversed with directions to the trial court to award any expert fees the court finds reasonable.  Each party is to bear its costs on appeal.


IBARRA, J.*


We concur:


PERLUSS, P. J.


FEUER, J.

---

\*      Judge of the Santa Clara County Superior Court, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.