Filed 11/7/24; Certified for Publication 12/5/24 (order attached)

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIRST APPELLATE DISTRICT

DIVISION TWO

|  |  |
|---|---|
| ASHLEY HOWELL,<br><br>    Plaintiff and Appellant,<br><br>v.<br><br>STATE DEPARTMENT OF STATE HOSPITALS,<br><br>    Defendant and Respondent. | A168526, A169105<br><br>(Napa County Super. Ct. No. 20CV000794) |

"After three years of litigation and a two-week trial," a jury found plaintiff Ashley Howell had been discriminated against by her former employer, Department of State Hospitals (DSH).  The jury awarded Howell $36,751.25 in lost earnings and health insurance benefits but nothing for pain and suffering.  After trial, the court denied Howell's motion for a limited new trial regarding non-economic damages and granted DSH's motion for judgment notwithstanding the verdict, striking the award for lost health insurance benefits.  As the prevailing party, Howell sought $1.75 million in attorney fees, costs, and prejudgment interest; the court awarded $135,102 "in fees and costs" but did not rule on her uncontested request for prejudgment interest.  Accordingly, we remand for the court to address Howell's request for prejudgment interest.  In all other aspects, we affirm.

1

## BACKGROUND

Howell worked for DSH as a temporary pre-licensed psychiatric technician between January 2, 2020 and January 24, 2020.[1]

DSH houses patients who are involuntarily committed to medical treatment, including criminal defendants deemed incompetent to stand trial, patients found not guilty by reason of insanity, and offenders with mental disorders, among others. Pre-licensed psychiatric technicians provide nursing and psychiatric care to DSH's disabled patients and have physical job duties like crisis intervention and restraining patients who pose a risk to themselves or others.

"As part of the hiring process," Howell underwent a pre-employment health screening, which required Howell to disclose, among other things, "[a]ny disorders of the nervous system," any "[l]ung or respiratory trouble," and any "[s]hortness of breath." Although Howell disclosed having asthma, she responded "no" to all other screening questions.

However, Howell had been previously diagnosed with major depressive disorder and posttraumatic stress disorder following a 2017 sexual assault by a patient inmate at a California Department of Corrections and Rehabilitation (CDCR) hospital in Stockton, where Howell then worked as a certified nursing assistant. After the assault, Howell experienced panic attacks with trouble breathing and shortness of breath and went on medical leave.[2]

On January 2, when Howell commenced working with DSH, she was still on medical leave with CDCR. In fact, on January 3, Howell submitted a

[1] All unspecified dates occurred in 2020.

[2] Howell filed a workers' compensation claim in connection with the assault; over the next few years, she received counseling and treatment.

doctor's note to CDCR stating that she could not return to work before February 23, and that she was unable to work with prison inmates.

DSH was not aware of Howell's leave status until on or about January 22, when CDCR informed DSH of the same as part of their regular communication exchange concerning employment transfers. In a subsequent records search, DSH discovered that Howell had sustained an injury to her "nervous system," the description of which was inconsistent with Howell's representations on her DSH health questionnaire. On January 24, DSH therefore terminated Howell's employment.[3]

Howell filed this lawsuit against DSH, asserting claims under the Fair Employment and Housing Act (Gov. Code, § 12940, et seq.; FEHA) for mental disability discrimination and physical disability discrimination, as well as claims for failure to accommodate, failure to engage in interactive process, and failure to prevent discrimination. The court granted summary judgment in favor of DSH on Howell's claims for failure to accommodate and failure to engage in interactive process; Howell dismissed her claim for failure to prevent discrimination on the first day of trial. Howell's remaining claims for mental and physical disability discrimination were tried to a jury, which found in Howell's favor on her mental disability discrimination claim only, awarding $28,941 in lost earnings, $7,810.25 in lost health insurance, and nothing for pain and suffering.

The parties filed competing posttrial motions. Howell moved for a limited new trial on noneconomic damages only or, alternatively, a conditional award of $70,000, which the court denied, and DSH moved for judgment notwithstanding the verdict, which the court granted, striking the

---

[3] DSH represents it formally terminated Howell "*without fault* to minimize any negative impact to her state service career."

3

award for lost health insurance because Howell had failed to present evidence of out-of-pocket expenses caused by the loss.[4]  As the prevailing party, Howell also sought over $1.75 million in attorney fees, costs, and prejudgment interest.  The court awarded $135,102.

Howell appeals from judgment and the posttrial orders.

## DISCUSSION

Howell asserts the trial court erred by (1) denying Howell's new trial motion on noneconomic damages, (2) striking the award of lost health insurance benefits, and (3) granting only part of Howell's motion for attorney fees, costs, and interest.

### I.  Howell's Motion for New Trial

Howell asserts that the trial court's denial of her new trial motion was an abuse of discretion because the noneconomic damage award of zero ($0) is inadequate as a matter of law and not supported by the evidence.

As "a general matter, orders granting a new trial are examined for abuse of discretion." (*Aguilar v. Atlantic Richfield Co.* (2001) 25 Cal.4th 826, 859, citing cases.)  However, because an order *denying* a new trial is not independently appealable, it is reviewed as part of the underlying judgment. (Code Civ. Proc., § 904.1, subd. (a)(2); *Walker v. Los Angeles County Metro. Tansp. Authority* (2005) 35 Cal.4th 15, 18.)[5]  Thus, we "review 'the entire record, including the evidence, so as to make an independent determination whether the error was prejudicial.' " (*Hasson v. Ford Motor Co.* (1982) 32 Cal.3d 388, 417, fn. 10, citing authority.)

---

[4] DSH also moved for a new trial regarding the lost health insurance award, which the court considered "moot" in light of its ruling on DSH's motion for judgment notwithstanding the verdict.

[5] All further statutory references are to the Code of Civil Procedure unless otherwise indicated.

Where a party claims inadequate damages or insufficient evidence, a "new trial shall not be granted . . . , unless after weighing the evidence the court is convinced from the entire record, including reasonable inferences therefrom, that the court or jury *clearly should have* reached a different verdict or decision."[6] (§ 657, italics added.) "A trial court has broad discretion in ruling on a new trial motion, and the court's exercise of discretion is accorded great deference on appeal." (*Fassberg Construction Co. v. Housing Authority of City of Los Angeles* (2007) 152 Cal.App.4th 720, 752, citing *City of Los Angeles v. Decker* (1977) 18 Cal.3d 860, 871–872.) "Accordingly, we can reverse the denial of a new trial motion based on insufficiency of the evidence or [inadequate] damages only if there is no substantial conflict in the evidence and the evidence compels the conclusion that the motion should have been granted." (*Fassberg*, at p. 152.)

## A. Relevant Facts

At trial, Howell sought noneconomic damages for approximately 16 months from January 24, 2020, through May 17, 2021, when Howell obtained new employment. Five witnesses testified regarding Howell's alleged noneconomic damages: Howell, Howell's fiancé, Howell's treating psychologist Dr. Sherri Holt, Howell's qualified medical evaluator Dr. Corey Hahn, and DSH's expert psychologist Dr. Paul Berg.[7]

---

[6] If a court grants a new trial solely on the issue of damages, it may "issue a conditional order granting the new trial unless the party against whom the verdict has been rendered consents to the addition of damages in an amount the court in its independent judgment determines from the evidence to be fair and reasonable." (§ 662.5, subd. (a)(1).)

[7] Doctors Holt and Hahn also offered documentary evidence in the form of medical records.

Howell described the termination as devastating and that it "felt like [she] was being punished because [she] was sexually assaulted." Howell experienced depression after the termination, which worried her fiancé. Howell's fiancé testified that she went back into "a state of depression. She was very upset and she was afraid that the [sexual assault] incident would never be put behind her." Howell became "closed off again," which impacted their relationship, and it took Howell "about a year and a half" to find new employment.

From 2018 through 2021, Howell sought therapy from Sunrise Counseling Group and Dr. Holt. According to Dr. Holt, the termination was detrimental to Howell's mental health and caused loss of confidence and self-esteem. Dr. Holt testified that Howell "seemed to regress" after termination, and "her symptoms" from the 2017 assault "came back."

Dr. Hahn evaluated Howell four times between 2017 and 2020, including a 2017 qualified medical evaluation in connection with Howell's workers' compensation claim stemming from the assault. In connection with a February 2020 examination following Howell's termination, Dr. Hahn reported that Howell "presented essentially the best [he] had ever seen her." Howell "appeared well rested, brighter in her affect and presentation, engaged and, you know, in a good mood." Dr. Hahn opined that Howell had achieved "permanent and stationary status," meaning "[m]aximum medical improvement," and that "there is no further treatment likely to result in any substantial further improvement."

Called to testify by DSH, Dr. Berg concluded that Howell's sexual assault was a "major" source of Howell's depression. While Howell's termination "bothered her," and she exhibited symptoms of depression

6

following her termination, Dr. Berg explained that "a lot of things bother a lot of people.  Being bothered is not the same as having a mental disorder."

In closing argument, Howell's counsel suggested the jury award between $50,000 and $150,000 for "mental suffering and emotional distress" and between $150,000 and $450,000 for "loss of enjoyment of life and grief" and "humiliation, depression, and anxiety."

**B.  Analysis**

Based on an independent review of the evidence, we find no reason to disturb the jury's verdict with respect to noneconomic damages.

First, the verdict is not inadequate as a matter of law.  In asserting otherwise, Howell relies upon two inapposite cases.  In *Dodson v. J. Pacific, Inc.* (2007) 154 Cal.App.4th 931, 933, 934, the plaintiff tripped and fell, suffering physical injury that required surgery.  Focusing on plaintiff's physical injury, the court held that, after a negligence finding, the jury's "failure to award any damages for pain and suffering results in a damage award that is inadequate as a matter of law" because a "plaintiff who is subjected to a serious surgical procedure must necessarily have endured at least some pain and suffering in connection with the surgery."  (*Id.* at pp. 933, 938.)  Here, however, Howell does not allege that the termination caused her physical injury, nor was there undisputed evidence Howell "necessarily" endured pain and suffering in connection with the termination as distinguished from the 2017 assault.

Howell's other authority—*Smith v. Covell* (1980) 100 Cal.App.3d 947—is similarly distinguishable.  In *Smith*, the court reversed the denial of plaintiffs' new trial motion not because of the jury's zero damages award but because of juror misconduct.  (*Id.* at p. 956 ["the zero verdict is a special category of inadequate damages resulting from the failure of the jury to

7

follow the court's instructions of law"].)  Howell did not identify juror misconduct as a statutory basis for the new trial motion,[8] nor does the record present any suggestion of misconduct.  Thus, neither *Dodson* nor *Smith* require that Howell be awarded noneconomic damages as a matter of law.

Howell's second argument—that "[n]o evidence was admitted at trial to justify an award of zero"—is belied by the record, which contains ample evidence supporting the jury's verdict.

Dr. Hahn, who first examined Howell in 2017, testified that Howell's "mental health symptoms," including her panic attacks, "were substantially caused by the sexual assault at the CDCR."  When Dr. Hahn examined Howell in 2018, he determined that Howell's "mental health condition and symptoms had worsened," due in part to Howell's "reexposure" to the inmate perpetrator.  Dr. Hahn explained that the second exposure had "a synergistic effect" where "symptoms can increase, you know, algorithmically, exponentially upwards."  Dr. Hahn recommended "cognitive behavior therapy to help treat her symptoms," such as Howell's panic attacks.  By July 2019, Howell's "condition and symptoms had significantly improved."  And, by February 2020, Howell "presented essentially the best [Dr. Hahn] had ever seen her," notwithstanding her "continued . . . mild to moderate PTSD." Dr. Hahn concluded that Howell had reached "a ceiling for treatment" and "maximal medical improvement."

In addition, Howell acknowledges that "Dr. Berg testified he did not believe the termination exacerbated any mental disorder."  According to Dr. Berg, Howell "showed no signs of emotional distress now," i.e., after

---

[8] A motion for a new trial "is governed and limited by the statutory provisions, . . . and can be granted only on a ground specified in the motion." (*Malkasian v. Irwin* (1964) 61 Cal.2d 738, 745, citing cases.)

termination.  While Howell may have "felt depressed" about the termination, she exhibited "symptoms of depression . . . *immediately before* she started working" with DSH, including nightmares, crying spells, and difficulty falling and staying asleep.  (Italics added.)

Thus, considering the whole record, the evidence does not compel an award of noneconomic damages.  Accordingly, the trial court did not err in denying Howell's new trial motion.

## II.  DSH's Motion for Judgment Notwithstanding the Verdict

Howell next argues the trial court erred in striking the jury's award for lost health insurance benefits.  Generally, we review a trial court's ruling on a motion for judgment notwithstanding the verdict for sufficiency of the evidence; however, de novo review is appropriate where an appeal raises purely legal issues.  (*Markow v. Rosner* (2016) 3 Cal.App.5th 1027, 1045; *Trujillo v. North County Transit Dist.* (1998) 63 Cal.App.4th 280, 284.)  Where " ' "the issue on appeal turns on a failure of proof at trial, the question for a reviewing court becomes whether the evidence compels a finding in favor of the appellant as a matter of law." ' " (*SwiftAir, LLC v. Southwest Airlines Co.* (2022) 77 Cal.App.5th 46, 59, quoting *Sonic Manufacturing Technologies, Inc. v. AAE Systems, Inc.* (2011) 196 Cal.App.4th 456, 466.)  Here, it is undisputed that Howell's health insurance benefits were discontinued upon her termination, and she did not obtain any substitute coverage.  Accordingly, we apply a de novo standard.[9]

---

[9] However, for reasons we discuss, applying the more deferential substantial evidence standard would not produce different results.  (*Sweatman v. Department of Veterans Affairs* (2001) 25 Cal.4th 62, 68 ["As in the trial court, the standard of review is whether any substantial evidence—contradicted or uncontradicted—supports the jury's conclusion"].)

At trial, Howell introduced no evidence of any damages resulting from the loss of health insurance benefits, which is a fundamental prerequisite to a compensatory damages award. (See *McCoy v. Pacific Maritime Assn.* (2013) 216 Cal.App.4th 283, 308 [the statutory objective of FEHA is " 'to make the victim of discrimination whole' "]; *Morgado v. City and County of San Francisco* (2020) 53 Cal.App.5th 1216, 1220 [" 'courts must take care not to grant the employee a windfall' "].) While Howell presented an invoice from her healthcare provider for insurance premiums in the amount of $1,115.75,[10] Howell testified that she never paid the invoice and never obtained any replacement insurance. Accordingly, Howell suffered no loss to compensate.

On appeal, Howell contends that the trial court "incorrectly concluded" that Howell was not entitled to lost health insurance benefits because she had not purchased "substitute benefits."[11] "In reaching said conclusion," Howell argues, "the trial court ignored controlling California authority and relied solely upon federal authority." We disagree.

Howell claims *Potter v. Arizona So. Coach Lines, Inc.* (1988) 202 Cal.App.3d 126, 135, "specifically held that lost health insurance benefits are recoverable 'as part of the benefits lost by wrongful termination.' " Not so. In *Potter*, the Court of Appeal affirmed the dismissal of plaintiffs' claims on a

---

[10] The invoice is for the period of March 1 to August 1; however, in argument, Howell used the unpaid invoice to extrapolate that seven months of unpaid premiums would equal $7,810.25, which the jury awarded. Thus, it appears Howell treated the invoice as the bill for a single month of coverage.

[11] As the trial court aptly explained: "There was no evidence at trial that [Howell] had suffered any out-of-pocket economic loss related to health insurance. [Howell] did not pay for alternative health insurance, nor did she suffer any economic losses as a result of payment for a non-insured loss. It would be entirely speculative to imagine the compensable value of health care as the cost of the premium."

pleading challenge because the trial court lacked jurisdiction "due to the exclusivity of the workers' compensation law." (*Id.* at p. 130.) Insofar as *Potter* discussed health insurance benefits, it noted such benefits may be "part of the compensation the [Workers' Compensation Appeals Board] could award," which provides no support for Howell's civil claim for damages. (*Id.* at p. 135; *Perrillo v. Picco & Presley* (2007) 157 Cal.App.4th 914, 929 [Workers' Compensation Appeals Board has "*exclusive jurisdiction*" over workers' compensation claims].)

Howell's final argument that juries "frequently award lost fringe benefits regardless of whether substitute benefits were purchased" is unsupported by the cited cases. For example, in *Fidler v. Hollywood Park Operating Co.* (1990) 223 Cal.App.3d 483, 489, the Court of Appeal *reversed* the jury's verdict, which did not include health insurance and only questionably included pension benefits, with instructions to conduct a new trial.[12] Howell also cites *Lowe v. California Resources Agency* (1991) 1 Cal.App.4th 1140, 1144, footnote 3, which defines backpay as including "fringe benefits (such as medical insurance)" but does not otherwise discuss awards for lost health insurance. Howell provides no explanation why *Lowe* supports her position, and a "reviewing court is not required to develop the parties' arguments" and may instead treat the undeveloped arguments as waived. (*Meridian Financial Services, Inc. v. Phan* (2021) 67 Cal.App.5th 657, 684; *Jones v. Superior Court* (1994) 26 Cal.App.4th 92, 99 ["Issues do not have a life of their own"].)

---

[12] *Lane v. Hughes Aircraft Co.* (1997) 65 Cal.Rptr.2d 889, which Howell cites without explanation, was reversed by the California Supreme Court and cannot "be cited or relied upon by a court or party." (See *Lane v. Hughes Aircraft Co.* (2000) 22 Cal.4th 405; Cal. Rules of Court, rule 8.115(a).)

Also unpersuasive is Howell's reliance on *Ofsevit v. Trustees of California State University & Colleges* (1978) 21 Cal.3d 763, 766. In *Ofsevit*, the California Supreme Court affirmed the trial court's award of "lost benefits" as part of plaintiff's reinstatement—without discussion of what the "benefits" included—based on case law establishing that "teachers who have been discharged in violation of their First Amendment rights are entitled to full back pay from the time of their unconstitutional dismissal to the date of their reinstatement." (*Id.* at p. 776.) Howell asserts no constitutional claims, and *Ofsevit* does not otherwise support her argument. Because Howell's cited cases do not specifically address the issue of substitute benefits, they "are not authority for propositions that are not considered." (*California Building Industry Association. v. State Water Resources Control Board* (2018) 4 Cal.5th 1032, 1043.)

Although based on federal precedent,[13] DSH offers the more compelling argument that a damages award should compensate the plaintiff for actual losses caused by the discrimination. (See, e.g., *Galindo v. Stoody Co.* (9th Cir. 1986) 793 F.2d 1502, 1517 [reversing "improper" award based on anticipated insurance premiums without a showing that plaintiff "actually incurred expenses for substitute medical . . . coverage"]; *E.E.O.C. v. Farmer Bros. Co.* (9th Cir. 1994) 31 F.3d 891, 902; see also *Rivera v. Baccarat, Inc.* (S.D.N.Y. 1999) 34 F.Supp.2d 870, 875 [a "plaintiff is entitled to compensation for the costs she incurred in *maintaining health insurance*

---

[13] "California courts look to pertinent federal precedent when applying FEHA because of the similarity between that statutory scheme and title VII of the Civil Rights Act of 1964 (42 U.S.C. § 2000e et seq.)." (*Frank v. County of Los Angeles* (2007) 149 Cal.App.4th 805, 817, fn. 3, citing *Guz v. Bechtel National, Inc.* (2000) 24 Cal.4th 317, 355.)

*coverage* equivalent to that she received through" the former employer], italics added.)

Because Howell failed to introduce any evidence that she suffered a loss, e.g., paid insurance premiums or otherwise incurred out-of-pocket costs related to the loss of insurance, the trial court properly struck the award for health insurance benefits.

### III.  Howell's Motion for Attorney Fees, Costs, and Interest

Last, Howell challenges the trial court's ruling on her motion for fees, costs, and interest.  "The normal rules of appellate review apply to an order granting or denying attorney fees; i.e., the order is presumed correct, all intendments and presumptions are indulged to support the order, conflicts in the evidence are resolved in favor of the prevailing party, and the trial court's resolution of factual disputes is conclusive." (*Apex LLC v. Korusfood.com* (2013) 222 Cal.App.4th 1010, 1017.)

Under FEHA, "the court, in its discretion, may award to the prevailing party . . . reasonable attorney's fees and costs, including expert witness fees . . . ." (Gov. Code, § 12965, subd. (c)(6).)  A "prevailing *plaintiff* should ordinarily receive his or her costs and attorney fees unless special circumstances would render such an award unjust." (*Williams v. Chino Valley Independent Fire Dist.* (2015) 61 Cal.4th 97, 115.)

The primary method for calculating a reasonable attorney fee award is the lodestar method, which multiplies the number of hours reasonably expended by a reasonable hourly rate. (*Lealao v. Beneficial California, Inc.* (2000) 82 Cal.App.4th 19, 26.)  Trial courts may increase or decrease the lodestar "by applying a positive or negative 'multiplier' to take into account a variety of other factors, including the quality of the representation, the novelty and complexity of the issues, the results obtained, and the contingent

13

risk presented." (*Ibid.*) The choice of a fee calculation method is generally one within the discretion of the trial court, with the "ultimate goal" being to calculate an award that fairly compensates counsel without encouraging unnecessary litigation. (*Chavez v. City of Los Angeles* (2010) 47 Cal.4th 970, 985 (*Chavez*); *Laffitte v. Robert Half Internat. Inc.* (2016) 1 Cal.5th 480, 504.) Accordingly, a " 'fee request that appears unreasonably inflated is a special circumstance permitting the trial court to reduce the award or deny one altogether.' " (*Chavez*, at p. 990.) "When the trial court substantially reduces a fee or cost request, we infer the court has determined the request was inflated." (*Christian Research Institute v. Alnor* (2008) 165 Cal.App.4th 1315, 1323.)

## A. Relevant Facts

Howell's counsel "commenced its review and investigation" of Howell's termination on January 31, 2020. Between then and July 2023, Howell's counsel worked 1,444 hours in total, "over two-thirds of [which] were spent preparing for and trying the case." In a January 2023 settlement conference statement, Howell estimated her "remedies" to include $29,818 for lost wages, between $250,000 and $350,000 for noneconomic damages, prejudgment interest of $6,854.06, and "Attorney's Fees & Costs" of $123,101.95.

But seven months later in her posttrial motion for attorney fees, Howell's counsel calculated the lodestar to be $997,400, based on hourly rates of $750 and $650, and sought a 1.75 multiplier, resulting in a total attorney fee request of $1,745,450, plus litigation costs in the amount of $33,735.29. Howell also sought prejudgment interest at a rate of 7 percent from "the date the lost wages should have been paid (October 2, 2020) to the date of entry of Judgment (May 24, 2023)," totaling $5,356.04.

14

In its opposition before the trial court, DSH argued that Howell's lodestar should be reduced by 80 percent "as she obtained only nominal success" and asked that the attorney billing rates be reduced to $500 per hour for "shareholders" and $300 per hour for "associates." DSH also argued that further reduction and denial of Howell's request for a multiplier would be appropriate as a policy matter because "the award will be assessed against a state entity, DSH, and would be inappropriately shouldered by the taxpayers." Notably, DSH did not challenge Howell's requests for litigation costs or prejudgment interest. On reply, Howell's request for attorney fees grew again to $1,769,425, based on a revised lodestar of $1,011,100.

The court ultimately granted Howell's motion in part and awarded Howell a total of $135,102. In doing so, the court called Howell's fee request "striking" and "unsupportable," finding the time spent on various matters "shocking" and "beyond all reason." Thus, the court determined "that awarding the requested fees would effect an injustice."

But the court also found that awarding Howell no attorney fees "would also effect an injustice as [Howell] did prevail on one of her claims at trial." Thus, the court explained that the "solution that presents the *least* risk of effecting injustice is reliance on [Howell's] January 4, 2023, estimate, which sought $123,102 in fees and costs." The court made "one adjustment" to Howell's pre-trial estimate by awarding "an additional amount to compensate counsel for the need to re-prepare for trial," considering an unforeseen continuance of trial from February 2023 to May 2023. The court found "that 12 hours for each of [Howell's] two trial counsel is a reasonable amount for this purpose," adding $12,000, for a total award of $135,102 in "fees and costs." The court declined to apply any multiplier and did not separately address Howell's request for prejudgment interest.

15

**B. Analysis**

Because there is no dispute that Howell is entitled to fees under Government Code section 12965, subdivision (c)(6), we review the trial court's award for abuse of discretion. (*Vines v. O'Reilly Auto Enterprises, LLC* (2022) 74 Cal.App.5th 174, 184.) In asserting error, Howell makes nine arguments, and we agree with only one—the trial court should have specifically addressed Howell's unopposed request for prejudgment interest.

Several arguments are easily disposed of because Howell fails to show " ' "abuse of discretion, a prejudicial error of law, or necessary findings not supported by substantial evidence." ' " (*Bernardi v. County of Monterey* (2008) 167 Cal.App.4th 1379, 1394.) Howell claims the trial court "falsely accused" her counsel of "inaccurate arithmetic," marginalized Howell's success, improperly considered DSH's settlement offer, and wrongly relied on *Steele v. Jensen Instruments Co.* (1997) 59 Cal.App.4th 326, 330, where the trial court awarded no attorney fees to a FEHA plaintiff. However, the trial court did not reduce or otherwise augment the fee award based on Howell's arithmetic or success, DSH's settlement offer, or *Steele*. The court raised the discrepancy in Howell's computation of total hours expended not as a basis for reducing the requested fees, but rather, in noting that counsel did not provide the court with a means of auditing "the block billing breakdown," which the court found to be "outside all bounds of reason." That counsel correctly added unreasonable hours together does not impact the court's finding of unreasonableness. Similarly, in recounting the "context" of the fee motion, the court explained that Howell "asserted five causes of action" but "prevailed on only one" and that DSH offered to settle Howell's claims for $30,000 "[s]ome four months before trial." Both are accurate statements, and there is no discussion of apportionment or reduction that would suggest the

16

trial court placed weight on either fact.[14]  Finally, it does not appear the trial court inappropriately relied on *Steele*, since it awarded Howell attorney fees, implicitly finding her the prevailing party.

Howell next challenges the court's reliance her pretrial settlement conference statement "[i]nstead of analyzing the evidence and using the lodestar method."  We are not persuaded.  The court, in detail and consistent with approved methods of fee calculation, found that the total hours expended were "outside all bounds of reason given the number of issues involved in the matter and their relative lack of complexity."  Further, Howell's "surreptitious" addition of a multiplier rendered the requested rates unreasonable.  Thus, the court determined "that $500 per hour is a reasonable hourly rate" but had "no systematic way to audit" the number of hours because Howell's counsel submitted only "block-billed" summaries.[15]  Given the unreasonably inflated fee request, the court was authorized to substantially reduce the requested amount (or deny the request altogether). (*Chavez*, *supra*, 47 Cal.4th at pp. 990–991.)

Howell also faults the trial court for purportedly considering the hourly rates of "counsel's home San Joaquin County" rather than "the rate where the trial court was located in Napa County" and further argues that the trial court was "prejudiced" by DSH's argument that it is a public entity, and any award will be paid by the taxpayers.  Again, we see no error.  Insofar as the

---

[14] To the contrary, the court added $12,000 to Howell's estimate for trial preparation that occurred *after* DSH's settlement offer.

[15] The court was not required to accept Howell's figures (*Consumer Privacy Cases* (2009) 175 Cal.App.4th 545, 556 ["the ' "experienced trial judge is the best judge of the value of professional services rendered in [their] court" ' "]), and Howell proposes no alternative means of calculating a reasonable number of hours expended.

17

court noted the prevailing rates in San Joaquin County, it did so to highlight that Howell's counsel had "surreptitiously" applied a risk multiplier to counsel's hourly rate, which was "not well received by the [c]ourt" and supports the trial court's reduction. (See, e.g., *Robertson v. Fleetwood Travel Trailers of California, Inc.* (2006) 144 Cal.App.4th 785, 819 [the court "first" calculates the lodestar, "then" the lodestar may be augmented by a multiplier].) Similarly, the court's only discussion of taxpayers explains its refusal to apply a positive multiplier, where courts expressly may consider taxpayer status. (*Lealao v. Beneficial California, Inc.*, *supra*, 82 Cal.App.4th at p. 40, fn. 8 [in deciding whether to apply a multiplier, courts may consider " 'the fact that an award against the state would ultimately fall upon the taxpayers' "].)

We also disagree with Howell's final argument that the award should "be reversed because it is so small that it 'shocks the conscience . . . .' " An attorney fee award is to compensate counsel, not provide a windfall. (*Chavez*, *supra*, 47 Cal.4th at p. 985.) As explained in the trial court's order, this action was not complex and was over litigated by Howell's counsel. As examples, the trial court noted that Howell brought 19 motions in limine, none of which were successful, and spent 62 hours opposing DSH's motion to compel Howell's mental exam in an action where Howell claimed pain and suffering. "The unreasonable assertions of time spent persist[ed]" in Howell's reply brief in support of her attorney fee request.[16] Counsel is "not entitled to

---

[16] Howell initially sought a combined total of 15 hours for future "post-trial work related to a Reply Brief regarding this Motion for Attorney's Fees." But, in the reply brief, Howell increased her ask to 35 hours. The represented increase in incurred hours is possible, since Howell's 23-page reply brief was more than twice the limit set forth in California Rules of Court, rule 3.1113(d) ("No reply or closing memorandum may exceed 10 pages"), but that does not mean it is reasonable.

compensation for . . . work merely because it was performed." (*Baxter v. Bock* (2016) 247 Cal.App.4th 775, 793.) Rather, it is counsel's burden "to persuade the trial court the work was reasonably necessary, both as to the particular tasks performed and the amount of time devoted to them." (*Ibid.*)

Moreover, in January 2023, Howell estimated attorney fees and costs to be $123,101.95. Howell argues that the estimate represented the fees and costs "as of the time of the [Mandatory Settlement Conference]," not the fees and costs through trial; however, Howell provides no justification for how she reasonably incurred nearly a million dollars in attorney fees between January and July 2023 in an action that had been pending since August 2020. Thus, we see no basis for finding the court's awarded amount so small that it shocks the conscience.

However, Howell argues that the trial court "altogether failed to address the issues of litigation costs and pre-judgment interest." We agree in part. The court's order addressed costs by awarding $135,102 in "fees *and costs*" (italics added); however, DSH did not oppose Howell's request for prejudgment interest below, the calculation of which the parties apparently stipulated "for the [c]ourt to decide." Because the court's order makes no mention of Howell's unopposed request, we remand to the trial court to consider Howell's request for prejudgment interest.

## DISPOSITION

The orders denying Howell's motion for new trial and granting DSH's motion for judgment notwithstanding the verdict are affirmed. Insofar as the court failed to address Howell's request for prejudgment interest, the matter is remanded for further consideration. The judgment is otherwise affirmed. DSH shall recover costs on appeal. (Cal. Rules of Court, rule 8.278(a)(3).)

_____
DESAUTELS, J.

We concur:

_____
RICHMAN, ACTING P. J.

_____
MILLER, J.

*Howell v. Department of State Hospitals* (A168526 & A169105)

**CERTIFIED FOR PUBLICATION**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIRST APPELLATE DISTRICT

DIVISION TWO

|  |  |
|---|---|
| ASHLEY HOWELL,<br><br>    Plaintiff and Appellant,<br><br>v.<br><br>DEPARTMENT OF STATE HOSPITALS,<br><br>    Defendant and Respondent. | A168526, A169105<br><br>(Napa County Super. Ct. No. 20CV000794)<br><br>**ORDER CERTIFYING OPINION FOR PUBLICATION** |

The opinion in the above-entitled matter, filed on November 7, 2024, was not certified for publication. For good cause, request for publication is granted.

Pursuant to California Rules of Court, rule 8.1105, the opinion is ordered certified for publication in the Official Reports.

Dated: _____                    _____
                                                                    Richman, Acting P. J.

1

| | |
|---|---|
| Trial Court: | Napa County Superior Court |
| Trial Judge: | Hon. Scott R.L. Young |
| Attorneys for Appellant: | Law Offices of Corren & Corren |
| | Adam Blair Corren |
| | Spencer D. Sinclair |
| Attorneys for Respondent: | Rob Bonta |
| | Attorney General of California |
| | Chris A. Knudsen |
| | Senior Assistant Attorney General |
| | Fiel D. Tigno |
| | Deputy Attorney General |
| | Gregory A. Call |
| | Deputy Attorney General |
| | Christopher D. Beatty |
| | Deputy Attorney General |